**UNIVERSITY MARKETING AND CONSULTING, INC.**

v.

**The HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY et al.**

**Civ. A. No. 73–443.**

United States District Court,
E. D. Pennsylvania.

May 19, 1976.

Alan L. Spielman, Philadelphia, Pa., for plaintiff.

Daniel T. McWilliams, McWilliams & Sweeney, Philadelphia, Pa., for Hartford.

David Kanner, Kanner, Stein & Barol, Philadelphia, Pa., for other defendants.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

Presently before the Court is the plaintiff's motion to set aside the verdict and judgment and to enter judgment against the defendant Hartford Life and Accident Insurance Company (Hartford). Also, before the Court are the motions of the defendants Universal Insurance Service, Inc. (Universal), North Jersey Insurance Agency; Inc. (North Jersey) and Vincent Citarelli for a judgment notwithstanding the verdict or a new trial. Plaintiff alleges that the Court erred when it instructed the jury that its answers to the interrogatories were inconsistent and ordered them to continue their deliberations, after which the jury returned its verdict. The defendants Universal, North Jersey and Mr. Citarelli likewise contend that the Court's failure to accept the jury's first answers was error. In addi-tion, these defendants contend that there was insufficient evidence to support the judgment entered pursuant to the jury's verdict or that the verdict was at least against the weight of the evidence. Plaintiff has also moved for a new trial as to damages contending that the jury's award is against the weight of the evidence. We have determined that for the reasons stated herein, we must deny these post-trial motions.

The following facts, viewed in a light most favorable to the plaintiff, were produced at trial. The plaintiff, University Marketing and Consulting, Inc. (University Marketing) is a Pennsylvania corporation which was in the business of producing "campus calendars" for distribution on college campuses throughout the United States.[1] The campus calendar set forth the dates of certain scheduled activities for a particular college and was designed to be used on a student's desk as a blotter. The plaintiff derived its income from the sale of advertising space on the campus calendar, which calendar would then be distributed to college students when they registered for class at the beginning of a semester. Hartford is a Connecticut corporation which sells casualty, health and life insurance. North Jersey was a representative for Hartford authorized to write casualty insurance. North Jersey was also a representative for other insurance companies. Universal was a corporation which was engaged in the mass merchandising of insurance, while defendants Vincent Citarelli and John Delli Santi were principals and officers in both North Jersey and Universal.

On June 12, 1972, Wasburn Oberwager, a vice president of University Marketing, met with Mr. Citarelli,[2] Mr. Delli Santi[3] and Mr. Donald Evans in the office of Albert Hegyi, a business associate of Mr. Oberwager, at 342 Madison Avenue in New York City. (N.T. 1-24). The meeting was arranged by

---

1. At the time that this lawsuit was tried, the plaintiff was no longer in business.

2. Mr. Citarelli was the President of North Jersey and the Vice President of Universal. (N.T. 3-121).

3. Mr. Delli Santi was vice president of North Jersey, a general agent for Hartford, and president of Universal, which was in the business of mass merchandising insurance. (N.T. 2-196 to 2-197).

Mr. Hegyi who suggested to Mr. Evans, a commission salesman for Universal and North Jersey (N.T. 2–199 to 2–201, 2–208, 2–240), that the campus calendar might be a good medium for the mass merchandising of insurance. (N.T. 4–269). Mr. Citarelli told Mr. Oberwager that he represented Hartford in the mass merchandising of insurance. (N.T. 2–154). At the meeting, Mr. Citarelli, Mr. Delli Santi and Mr. Evans reviewed the operations of their companies and told Mr. Oberwager that college students might be an appropriate target for the mass marketing of insurance. (N.T. 1–26). Mr. Citarelli, who did most of the talking at the meeting, stated that they (Mr. Citarelli, Mr. Delli Santi, Universal and North Jersey)[4] represented Hartford and several other insurance companies. (N.T. 1–27). Mr. Oberwager presented the campus calendar to the North Jersey defendants and discussed with them the amounts of advertising in the campus calendar which could be purchased and the cost thereof. (N.T. 1–27, 1–28). Mr. Citarelli showed Mr. Oberwager several Hartford brochures and a copy of a letter concerning the mass merchandising of insurance with Eastern Airlines. (N.T. 1–29, 1–30). Mr. Oberwager discussed with Mr. Citarelli, Mr. Delli Santi and Mr. Evans the tight deadline which would have to be met in order for them to secure advertising space in the 1972 Fall calendar. (N.T. 1–31). Mr. Oberwager left a sample calendar and rate card together with the mechanical requirements for the calendar with Mr. Citarelli, Mr. Delli Santi and Mr. Evans. He also left a blank copy of the plaintiff's standard contract. (N.T. 1–32). At the conclusion of the June 12, 1972 meeting, Mr. Citarelli told Mr. Oberwager that he thought Hartford would be interested in the program, that he was very interested and planned to participate, and that the details of participation in the program should be worked out with Mr. Evans. (N.T. 1–35). Mr. Evans then gave Mr. Oberwager his business card which described him as a representative of Universal. (N.T. 1–34, 2–102).

After the June 12, 1972 meeting, Mr. Evans, at the request of Mr. Delli Santi, delivered the copy of the campus calendar to Mr. Glandorf, the assistant director of sales for Hartford. (N.T. 212). On June 13, 1972, after checking with the president of University Marketing, Mr. James Dunning, Mr. Oberwager telephoned Mr. Evans and informed him that the participation that they were considering in the campus calendar would cost $51,000.00. (N.T. 1–36, 1–37). On June 15, 1972, Mr. Oberwager received a telephone call from Mr. Evans who told Mr. Oberwager that Hartford was going to participate in the Fall 1972 campus calendar and that Hartford had approved both the amount of participation and the price. (N.T. 1–45). Mr. Oberwager testified that it was his understanding that the bill for $51,000.00 was to go to either North Jersey or Hartford, depending upon where Mr. Citarelli instructed University Marketing to send the bill. (N.T. 2–113). Mr. Oberwager told Mr. Evans that he would accept the oral commitment because the commitments for the fall calendar had to be made. (N.T. 1–45, 1–46). Following this conversation on June 15, 1972, University Marketing made a decision to order paper for future campus calendars. Mr. Oberwager also told Mr. Evans that he would like to get a written contract in the near future signed by either North Jersey or Hartford, and that in the event North Jersey signed the contract, he wanted Hartford to initial the contract or show some other kind of approval. (N.T. 1–46). Mr. Evans told Mr. Oberwager that a written contract would be sent shortly. On June 22, 1972, Mr. Evans telephoned Mr. Oberwager and told him that Hartford was cancelling its participation in the Fall 1972 campus calendar but that Firemen's Insurance Company (Firemen's) would take Hartford's place for $51,000.00. (N.T. 1–48). Mr. Oberwager said that such a

4. Hereinafter these four defendants will be referred to collectively as the North Jersey defendants.

change was fine with University Marketing and sent a letter to Mr. Evans on that same date confirming the change in participants from Hartford to Firemen's. However, on July 10, 1972, Mr. Evans telephoned Mr. Oberwager and told him that Hartford would participate in the campus calendar. (N.T. 2–72, 2–177). To confirm this conversation, Mr. Oberwager sent Mr. Evans a letter on July 10, 1972 stating that the parties were returning to their original contract with Hartford participating in the campus calendar. (N.T. 2–720, 4–163). Also, on July 10, 1972, University Marketing sent their printer, I. S. Berlin Co. in Chicago, Illinois, a list of all the advertisers who would participate in the Fall 1972 campus calendar, which list included Hartford. (N.T. 4–198).

On July 13, 1972, Mr. Citarelli had a telephone conversation with Mr. Dunning, the president of University Marketing. Also participating in the telephone call were Mr. Delli Santi and Mr. Eick, who was introduced on the telephone to Mr. Dunning as a representative of Hartford. (N.T. 4–161). Mr. Dunning testified that the purpose of this conversation was to sew up the loose ends of getting copy of the advertisement to the printer, to get the financial arrangements finalized and to settle all the remaining problems with respect to the campus calendar. (N.T. 4–161, 4–163). In the course of this telephone conversation, Mr. Dunning was instructed to send a letter to Hartford as soon as possible briefly describing the campus calendar program. (N.T. 4–165). Mr. Dunning was told that this letter was for the purpose of completing the records of Hartford. (N.T. 4–165). On July 13, 1972, the same day as the telephone conversation between Mr. Dunning, Mr. Eick, Mr. Citarelli and Mr. Delli Santi, Mr. Dunning and Mr. Oberwager sent a letter to Mr. John Glandorf, the Assistant Director of Sales of Hartford, as requested, which letter outlined generally the campus calendar program. (N.T. 2–57). This letter reads as follows:

Dear Mr. Glandorf:

I am writing you at the request of Mr. Vince Citarelli concerning UMC's "Campus Calendar" program and Hartford's participation.

Enclosed are copies of the Spring (1972) edition of "Campus Calendar", a brief review of the program, and appropriate Rate Cards.

This Fall, 1,300,000 calendars will be distributed on over one hundred campuses throughout the United States. Calendars are given free to students when they arrive on campus, and many parents not only see the calendars, but return home with a copy. In addition, since participating campuses have a population of 2,500,000, each calendar's exposure is widespread. For this reason, advertising effectiveness and response to offers on calendars back covers has been excellent, even as high as twenty-five percent for some offers.

I hope the above information is satisfactory. If you have any questions do not hesitate to call. Otherwise, I look forward to a long and mutually profitable relationship.

Yours sincerely, James D. Dunning, Jr., President.[5]

After the July 13, 1972 telephone conversation, Mr. Oberwager received a telephone call from Mr. Citarelli during which the billing for the advertising in the campus calendar was discussed. (N.T. 2–41, 2–171). On July 21, 1972, Mr. Oberwager and Mr. Dunning placed a telephone call to Hartford and spoke with Mr. Glandorf. (N.T. 2–73, 4–170). Mr. Glandorf was told by Mr. Dunning that University Marketing needed the copy of the advertisement that they were going to place in the campus calendar immediately because the production of the calendar could not be delayed any longer. (N.T. 2–74, 4–171). Mr. Glandorf stated that he was not going to send any copy, that he was aware that there had been discussions between University Marketing and North Jersey, that he felt there had been no commitment on behalf of Hartford, and that Hartford would not pay for the

advertisement. (N.T. 2–74, 2–191, 4–171, 4–201). The Fall 1972 campus calendar was published without any advertising appearing on behalf of Hartford.

The evidence also showed that neither North Jersey, Universal, Mr. Citarelli or Mr. Delli Santi ever intended to pay for the Hartford advertisement in the campus calendar. (N.T. 2–223 to 2–225). Mr. Glandorf testified that Hartford never agreed to nor intended to pay for the campus calendar advertising program. (N.T. 3–28, 3–33, 3–35, 3–36, 3–51). However, Mr. Citarelli testified that he discussed with Mr. Glandorf his desire that Hartford pay for the campus calendar although no one from Hartford ever told Mr. Citarelli that Hartford would pay for advertising in the campus calendar. (N.T. 4–42, 4–48). Mr. Glandorf testified that Hartford did give consideration as to whether they would permit North Jersey or their representatives to use the Hartford name and logo (stag). (N.T. 3–22). Furthermore, Mr. Glandorf of Hartford told Mr. Citarelli that before Hartford would allow its name and logo to be used in connection with any advertising, approval of the copy of the advertisement to be used had to be obtained. (N.T. 3–37, 3–43). Indeed, on July 17, 1972, Mr. Glandorf sent a letter to Mr. Citarelli in which he stated (1) that Hartford would have to approve any advertising to be used in the campus calendar before its name and logo could be used; (2) that Hartford would not finance any part of the campus calendar program; and (3) that University Marketing should be made aware of the fact that the use of Hartford's name and logo in connection with the advertisement did not imply any financial responsibility on the part of Hartford. (N.T. 3–48).[6] Mr. Glandorf did not ascertain whether Mr. Citarelli followed his instruction to make it clear that Hartford would not be financially responsible for the advertisement. (N.T. 3–54, 3–55).[7]

■ At the close of the plaintiff's case, all defendants moved for a directed verdict

pursuant to Rule 50 of the Federal Rules of Civil Procedure. After extensive oral argument, the Court denied the motions for a directed verdict. (N.T. 5–2, 5–7). The Court did state that it was troubled as to the sufficiency of the evidence in connection with Hartford but had determined that the matter should go to the jury for its initial determination. (N.T. 5–58). The defendants offered no evidence. The Court made a determination that interrogatories should be submitted to the jury covering the issues that they would be required to resolve. There was no objection to the submission to the jury of interrogatories nor to the form of the interrogatories submitted. The following interrogatories were submitted to the jury during the charge of the Court:

1. Do you find from a preponderance of the evidence that there was a binding contract between the plaintiff and the defendant, Hartford, for advertising space in the campus calendar?

Yes___ No___

2. Do you find from a preponderance of the evidence that the defendant, Universal Insurance Service, Inc., made and breached an implied warranty that it had authority to bind Hartford for advertising space in the campus calendar?

Yes___ No___

3. Do you find from a preponderance of the evidence that the defendant, North Jersey Insurance Agency, Inc., made and breached an implied warranty that it had authority to bind Hartford for advertising space in the campus calendar?

Yes___ No___

4. Do you find from a preponderance of the evidence that the defendant, Universal Insurance Service, Inc., tortiously misrepresented its authority to bind Hartford for advertising space in the campus calendar?

Yes___ No___

**6.** Exhibit P–11.

**7.** Mr. Glandorf had at this point never had any contact with University Marketing other than

the letter of July 13, 1972 from Mr. Dunning. (N.T. 3–56, 3–59).

5. Do you find from a preponderance of the evidence that the defendant, North Jersey Insurance Agency, Inc., tortiously misrepresented its authority to bind Hartford for advertising space in the campus calendar?

Yes___ No___

6. Do you find from a preponderance of the evidence that the defendant, Vincent Citarelli, tortiously misrepresented the authority of Universal Insurance Service, Inc. and/or North Jersey Insurance Agency, Inc. to bind Hartford for advertising space in the campus calendar?

Yes___ No___

7. Do you find from a preponderance of the evidence that the defendant, John L. Delli Santi, tortiously misrepresented the authority of Universal Insurance Service, Inc. and/or North Jersey Insurance Agency, Inc. to bind Hartford for advertising space in the campus calendar?

Yes___ No___

After deliberation, the jury returned having answered "Yes" to all questions submitted to it with the exception of question number 7, which question was answered "No". The Court then brought counsel to sidebar and asked if the answers were not inconsistent. (N.T. 6–66). Hartford argued that the answers were indeed inconsistent while both University Marketing and the North Jersey defendants argued that the answers were not inconsistent. After discussion at sidebar, counsel for University Marketing agreed to further instructing the jury that if the jury found Hartford was liable, they could not find the North Jersey defendants liable, but if they found Hartford was not liable, the North Jersey defendants could be liable, pursuant to the Court's charge. (N.T. 6–68). Counsel for the North Jersey defendants would not agree to any resubmission of the issues to the jury. (N.T. 6–69). The Court then recharged the jury as follows:

Now bearing in mind the instructions that I gave you earlier this afternoon still apply, you have answered yes to Interrogatory Number 1.

That means that pursuant to the charge that I gave you you found that there was either apparent authority, agency by estoppel, acquiescence, ratification, or affirmance by the Hartford; and by having answered yes to Interrogatories Numbers 2, 3, 4, 5, and 6 you have, in effect, found that there was no basis for finding authority to bind Hartford, either by apparent authority, agency by estoppel, acquiescence, ratification, or affirmance.

Now under the law where you find authority based on any of those aforesaid theories this Court feels that it is inconsistent to find there was either a breach of implied warranty of authority or fraudulent misrepresentation. Therefore, you will, in light of this further instruction, deliberate further as to all of these interrogatories, and I am going to give you a clean copy of the same questions. I just want to make a few remarks.

The agent is not liable to the third party to the transaction if the alleged principal becomes bound as a party because the third party is not affected by the fact that the agent committed what might have been a wrong as to the principal.

Now if the purported principal ratifies the transaction the agent is not liable to the third party for the breach of warranty or fraudulent misrepresentation.

Therefore, if you find a basis to bind Hartford in this case you cannot also find liability against any of the other defendants for breach of an implied warranty of authority or fraudulent misrepresentation.

By the same reasoning, if you find a breach of implied warranty or fraudulent misrepresentation you cannot find that there was a binding contract between the plaintiff and Hartford. (N.T. 6–74 to 6–75).

The Court based its charge as quoted above upon its anticipation, and that of counsel, that the jury's answers would result in a finding of liability. It is clear that once a

contract with a principal is established, there can be no liability as to the unauthorized agents who may have breached their implied warranty of authority or tortiously misrepresented their authority. This rule is based upon the proposition that the third party always anticipated that it was entering a contract with the principal and once a contract with the principal is established, the third party is not aggrieved if the unauthorized agents are relieved from liability. The third party in such a situation bargained for and obtained a contract with the principal. As stated in § 338 of the *Restatement of Agency (Second)*,

> Ratification by a principal of a contract which an agent without authority purported to make for the principal terminates the liability of the agent to the other party for the breach of warranty or misrepresentation of authority.

See also 2A C.J.S. Agency § 101. Therefore, since it was clear that Hartford could not be liable for breach of contract at the same time that North Jersey and Universal were liable for breach of implied warranty of authority and North Jersey, Universal and Mr. Citarelli were liable for tortiously misrepresenting their authority, the Court determined that such a finding of liability would be inconsistent. As is apparent from the above quoted charge, when the Court sent the jury back for further deliberation, we instructed them that such findings of liability were inconsistent. Following further instruction quoted above and deliberation, the jury returned having answered "No" to question number 1, "Yes" to question numbers 2–6 and "No" to question number 7. The Court accepted these answers. The trial having been bifurcated, the Court ordered University Marketing to proceed to prove damages against North

Jersey, Universal and Mr. Citarelli. The jury, after being instructed as to damages, deliberated and returned a verdict in the amount of $26,300.00 against North Jersey, Universal and Vincent Citarelli. Judgment was entered in favor of Hartford and Mr. Delli Santi against University Marketing on the plaintiff's claims against them. Judgment was entered in favor of University Marketing against North Jersey, Universal and Mr. Citarelli in the amount of $26,300.00.

University Marketing and North Jersey, Universal and Vincent Citarelli have each moved to set aside the judgment entered by the Court and to enter judgment based upon the first answers to the interrogatories returned by the jury. Citing the well established principles that "it is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them", *Gallick v. Baltimore and Ohio Railroad Company*, 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618, 627 (1963), and "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way," *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798, 807 (1962), University Marketing, North Jersey, Universal and Mr. Citarelli have advanced several "views" of the case under which they claim that the jury's original answers were consistent. University Marketing argues that it was never its theory of the case that the North Jersey defendants possessed express authority on behalf of Hartford to enter into the purported advertising contract at the time they did so on June 15, 1972.[8] University Marketing argues that its theory of liability as to Hartford was based upon three separate theories: (1) Ratification of the terms of the June 15, 1972 contract by Hartford,[9] (2) that Hart-

---

**8.** The Court does not agree that this was the consistent theory of the plaintiff's case throughout the trial. Indeed, a close reading of the record in this case reveals that neither the Court nor opposing counsel could obtain a concise statement from the plaintiff as to its theory of liability.

**9.** The Court instructed the jury as to ratification as follows:

> Ratification is the affirmance by a person of a prior act which did not bind him, but which was professedly done on his behalf; and by ratification the act done on behalf of the purported principal is given effect as if it was originally authorized by the purported principal.

> \* \* \*. \* \* \*

ford was estopped by its own acts from denying the agency of the North Jersey defendants,[10] and (3) that Hartford had cloaked the North Jersey defendants with apparent authority to enter into the advertising contract with University Marketing.[11] Under the Court's charge, the jury was instructed as to each of the plaintiff's theories of liability and was told that in the event the preponderance of the evidence supported any one of them, the jury could find that there was a binding contract between University Marketing and Hartford. (N.T. 6–28 to 6–29).

The Court then instructed the jury as to the law to be applied in connection with the plaintiff's allegations against the North Jersey defendants. The jury was instructed that if they found that North Jersey and Universal purported to contract on behalf of Hartford, they could find that North Jersey or Universal had made and breached an implied warranty of authority to bind Hartford. (N.T. 6–31). The Court further charged that if the jury should find from a preponderance of the evidence that North

Jersey, Mr. Citarelli and Mr. Delli Santi fraudulently misrepresented that they had authority to bind Hartford with the intent of inducing the plaintiff's reliance thereon and that University Marketing relied upon such misrepresentation and that such reliance was reasonable and justified, the jury could find that these defendants tortiously misrepresented their authority to bind Hartford. (N.T. 6–33). University Marketing, North Jersey, Universal and Mr. Citarelli argue that it was consistent for the jury to have found that at the time that the North Jersey defendants entered into the purported contract with University Marketing on behalf of Hartford on June 15, 1972, North Jersey and Universal made and breached an implied warranty that they had authority to bind Hartford and that North Jersey, Universal and Mr. Citarelli tortiously misrepresented to University Marketing that they had authority to bind Hartford and that Hartford later ratified the contract. These parties further contend that North Jersey and Universal could have breached their implied warranty of authori-

---

Of course, there are some circumstances where failure to act may become an affirmance. The silence of a purported principal under such circumstances that according to the ordinary experience and habits of men and women one would naturally be expected to speak, if he did not consent, is evidence from which you, the jury, could find assent or consent.

Now if a third person, who has had dealings with a purported agent, reports these dealings to the purported principal under circumstances which reasonably justify an inference of consent, unless the purported principal discloses his dissent to the third person within a reasonable time this may also be evidence of affirmance. (N.T. 6–27 to 6–28).

10. The Court charged with respect to estoppel as follows:

A person who is not otherwise liable as a party to a transaction purported to be done on his account is, nevertheless, subject to liability to persons who have changed their position because of their belief that the transaction was entered into by or for said person if he was intentionally or carelessly caused such belief or, if, knowing of such belief and that others might change their positions because of it, he did not take reasonable steps to notify them of the facts. (N.T. 6–24).

11. Apparent authority was defined by the Court as follows:

Apparent authority is the power to affect the legal relations of another by transactions with third parties, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons.

Apparent authority results from a manifestation by the person that another is his agent, the manifestation being made to a third person and not, as when authority is created, expressly or directly to the agent.

Now apparent authority to do an act is created as to a third person by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done in his behalf by the person purporting to act for him.

It is the conduct or manifestation of the principal, not the purported agent, to the third party which creates the apparent authority. The principal must either intend to cause the third person to believe that the purported agent is authorized to act for him or his conduct must be such that he should realize that such conduct is likely to create the belief in the third person that the purported agent is authorized to act for the principal. (N.T. 6–22).

ty and that North Jersey, Universal and Mr. Citarelli could have tortiously misrepresented their authority to enter into such a contract and that Hartford by its conduct as to University Marketing had entered into a binding contract with University Marketing on the basis of the Court's charge on estoppel, i.e., that Hartford was estopped from asserting that North Jersey or Universal lacked authority to enter into such a contract. Finally, these parties assert that North Jersey and Universal may have made and breached an implied warranty of authority and that North Jersey, Universal and Mr. Citarelli may have tortiously misrepresented their authority to bind Hartford, but that at the time the contract was entered into by the North Jersey defendants and University Marketing, Hartford had cloaked their agents with apparent authority which would lead, under the Court's charge, to a finding of a binding contract between University Marketing and Hartford. These parties contend that the court should not have sent the jury back for further deliberation because on their theory of the case the first answers of the jury were consistent. Finally, these parties argue that based upon the jury's first answers to the interrogatories submitted to them, the Court should enter judgment against Hartford and in favor of North Jersey, Universal and Mr. Citarelli. This contention is based upon the proposition that once there is a binding contract between a principal and a third party, an agent who breached an implied warranty of authority or tortiously misrepresented this authority to bind such a principal is relieved of his liability therefor.[12]

Whatever surface appeal such an approach to the legal problems presented by this case in its present posture may have, the facts of this case will not permit such a result. Hartford, in its memorandum in opposition to the motions to set aside the verdict, asks that it be granted the right,

should judgment be entered against it, to file a motion for a judgment notwithstanding the verdict. Because we have determined that the case is presently ripe for final resolution, we have considered Hartford as having presented such an alternative motion.[13] As previously stated herein, the Court allowed the case to go to the jury against Hartford in spite of its doubts as to the sufficiency of University Marketing's evidence. With the advantage of hindsight and having had the opportunity to carefully review the full record in this case, we now determine that the Court should have directed a verdict in favor of Hartford and against University Marketing.

A judgment notwithstanding the verdict is proper only where as a matter of law the evidence is not sufficient to create an issue of fact for the jury. It is well settled in this Circuit that the standard to be followed by a federal court in an action based upon diversity of citizenship in determining whether the issue of the plaintiff's case should be submitted to the jury is whether the evidence presented is sufficient for the jury reasonably to find, without resort to prejudice or guess, that the plaintiff is entitled to a verdict. *Kridler v. Ford Motor Company*, 422 F.2d 1182 (3d Cir. 1970); *Denneny v. Siegel*, 407 F.2d 433 (3d Cir. 1969). In considering a motion for a judgment notwithstanding the verdict, this Court is not free to weigh the evidence or pass on the credibility of witnesses, or to substitute its judgment of the facts for that of the jury. See Wright and Miller, *Federal Practice and Procedure* : Civil § 2524, at 544. The Court is bound to accept as true all the facts favorable to the plaintiff, and draw all reasonable inferences against the defendant. *Denneny v. Siegel, supra*. If the evidence is such that reasonable men could have no doubt, a directed verdict is appropriate and judgment notwithstanding the verdict on the issue is proper, if the defendant moved for a directed verdict on

---

**12.** Restatement of Agency (Second) § 338. See discussion on page 13 *infra*.

**13.** Hartford presented a proper motion under Rule 50 of the Federal Rules of Civil Procedure

at the close of plaintiff's case at trial. The motion was based upon the sufficiency of the evidence the plaintiff presented against Hartford.

that issue, which Hartford did.[14] *Mroz v. Dravo Corp.*, 429 F.2d 1156, 1163–64 (3d Cir. 1970); *Gatenby v. Altoona Aviation Corp.*, 407 F.2d 443, 445–46 (3d Cir. 1968).

 It is clear from a review of the facts outlined herein, that the evidence is insufficient to support a jury finding of a binding contract between Hartford and University Marketing based upon any of the theories advanced by University Marketing. First, University Marketing now contends that it never was its position that there was any evidence that the North Jersey defendants possessed express authority to bind Hartford to the $51,000.00 advertising contract. We agree and find that the record is devoid of any evidence of such express authority. We must, therefore, examine the evidence presented by University Marketing in support of its other theories advanced against Hartford. The *Restatement of Agency (Second)* § 82 defines Ratification as follows: [15]

Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.

Section 83 of the *Restatement of Agency (Second)* defines Affirmance as either:

a) a manifestation of an election by one on whose account an unauthorized act has been done to treat the act as authorized, or

b) conduct by him justifiable only if there were such an election.

At trial, University Marketing argued that the failure of Hartford to answer its letter of July 13, 1972, which letter was sent to Hartford at the request of Mr. Citarelli, was evidence of ratification by silence on the part of Hartford which created an issue of fact for the jury. It is clear, and the Court so charged the jury, that an affirmance of an unauthorized transaction can be inferred from a failure to repudiate it. *Re-*

*statement of Agency (Second)* § 94 comment a provides:

Silence under circumstances that according to the ordinary experience and habits of men, one would naturally be expected to speak if he did not consent, is evidence from which assent can be inferred. Such inference may be made although the purported principal had no knowledge that the other party would rely upon the supposed authority of the agent; his knowledge of such fact, however, coupled with his silence, would ordinarily justify an inference of assent by him. Whether or not such an inference is to be drawn is a question for the jury, unless the case is so clear that reasonable men could come to but one conclusion.

Further, comment c of § 94 of the *Restatement* provides that:

If a third person, who has had dealings with a purported agent, reports these to the purported principal under circumstances which reasonably justify an inference of consent unless the principal discloses his dissent, the failure of the principal to dissent within a reasonable time, is, unless explained, sufficient evidence of affirmance.

A careful reading of the letter of July 13, 1972 reveals that it is nothing more than an informational description of the campus calendar. It is clear that the failure to answer this letter could raise no inference in the minds of reasonable men that Hartford had ratified the purported contract entered into between the North Jersey defendants and University Marketing. The letter cannot in any manner be interpreted as requiring Hartford to speak if it did not consent. The letter does not refer to a contract with Hartford. Further, it does not even mention a contract with the North Jersey defendants. Reasonable men could not, on the basis of this letter, conclude that Hartford's failure to answer the July 13, 1972 letter was evidence of ratification. The

---

14. See footnote 13, *infra.*

15. The parties agree that New Jersey law is to be applied to the substantive issues in the case.

They further agree that the law as set forth in the Restatement is the law that New Jersey courts would apply.

missing element in the plaintiff's proof is that there is no evidence that Hartford learned prior to the telephone call of July 21, 1972 that any contract was entered into on its behalf.

 University Marketing also contended that Hartford had cloaked North Jersey and Universal with apparent authority to enter into the contract with Hartford on its behalf.

Apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons. *Restatement of Agency (Second)* § 8.

Of course apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him. *Restatement, supra,* § 27. It is the conduct or manifestation of the principal, not the purported agent, to the third party which creates apparent authority. It is a basic requirement of the creation of apparent authority that the principal be responsible for the information which comes to the mind of the third person from the principal. *Restatement, supra,* § 27 comment b. Furthermore, apparent authority exists only to the extent that it is reasonable for the third party dealing with the alleged agent to believe that the agent is so authorized. *Restatement, supra,* § 27 comment c. With these principals in mind, an examination of the record in this case establishes that there was no evidence presented from which a reasonable person could find that Hartford had by its conduct or through written or spoken words, led University Marketing to reasonably believe that any of the North Jersey defendants had authority to enter into the alleged advertising contract with University Marketing. To be sure, North Jersey was a general agent of Hartford for the purpose of selling its insurance. However, this fact alone is not sufficient manifestation by Hartford so that University Marketing could reasonably believe that Hartford had authorized any of the North Jersey defendants to enter into a $51,000.00 advertising contract on its behalf. The only other evidence of participation by Hartford in this advertising transaction was on July 13, 1972 when Mr. Dunning spoke to Mr. Citarelli concerning the mechanical requirements for participation in the campus calendar and Mr. Eick, a Hartford health insurance representative, was present during the discussion. However, this discussion took place well after the contract was purportedly entered into on behalf of Hartford by North Jersey and/or Universal and nothing said by Mr. Eick could be construed as a representation by Hartford that any of the North Jersey defendants had the authority to bind Hartford on such a contract. The record is barren of any other acts or writings by Hartford which University Marketing could reasonably construe as manifesting apparent authority.

 Agency by Estoppel is defined in § 8(B) of the *Restatement of Agency (Second)* as follows:

A person who is not otherwise liable as a party to a transaction purported to be done on his account, is nevertheless subject to liability to persons who have changed their positions because of their belief that the transaction was entered into by or for him, if

(a) he intentionally or carelessly caused such belief, or

(b) knowing of such belief and that others might change their positions because of it, he did not take reasonable steps to notify them of the facts.

This concept of estoppel is closely related to apparent authority in that both depend upon a manifestation by the alleged principal to a third person and a reasonable belief by the third person that the alleged agent is authorized to bind the principal. *Restatement, supra,* § 8B comment b. A purported principal may become liable to a third party by failing to reveal the truth if he knows that another is acting or will act under a

misapprehension as to the authority of his agent; he must exercise due care to give the appropriate information. *Restatement, supra,* § 8B, comment d. Again, the evidence in this case is totally insufficient for reasonable persons to appropriately apply the doctrine of estoppel as to Hartford. As previously pointed out, there was no evidence presented by which a reasonable jury could conclude that Hartford had taken any action which would lead a reasonable person to believe that any of the North Jersey defendants had authority to enter the alleged advertising contract. Also, there is no showing that Hartford failed to exercise due care when it did not reply to the aforementioned letter sent by University Marketing on July 13, 1972. As pointed out, the letter was informational in nature and in no way revealed that University Marketing believed that it had a contract with Hartford. There is no evidence in this record from which a reasonable jury could infer that Hartford had knowledge that University Marketing was under a misapprehension in connection with its purported contract for $51,000.00.

Therefore, based upon our careful review of the evidence presented by the plaintiff, University Marketing, it would have been appropriate for the Court to direct a verdict in favor of Hartford on the plaintiff's claim against it. We have determined, therefore, that it would not be proper at this time to enter judgment based upon the first set of answers, which answers found a binding contract between Hartford and University Marketing.

Our conclusion that we should not enter judgment against Hartford at this time is reinforced because of the case's unique procedural posture. Were we to accept the argument of University Marketing, North Jersey, Universal and Mr. Citarelli that the first set of answers were not inconsistent, we would enter judgment against Hartford and would relieve the North Jersey defendants of liability. Hartford would then move for a judgment notwithstanding the verdict,[16] which motion the Court would grant. Then, based upon either the jury's first set of answers or the second set, the Court would reinstate the judgment which was originally entered against North Jersey, Universal and Mr. Citarelli. Rather than proceed in such a circular manner, the Court has determined that substantial justice can only be achieved by refusing to disturb the judgment. Therefore, we will deny the motions to set aside the judgment.

North Jersey, Universal and Mr. Citarelli have moved for a judgment notwithstanding the verdict on the basis that there is insufficient evidence to support the verdict against them. These same defendants have also moved for a new trial on the basis that the verdict is against the weight of the evidence. These motions, which are both based upon the evidence presented by the plaintiff, can be treated together. For the reasons stated herein, we will deny the motions.

■■■■ We have heretofore reviewed the standards to be applied by the Court in connection with a motion for a judgment notwithstanding the verdict based upon the sufficiency of the evidence, and we will apply that same standard here. A motion for a new trial alleging that the verdict was against the weight of the evidence is a matter addressed to the sound discretion of the trial judge and it is the duty of the Court to be certain that the verdict was not influenced by partiality or prejudice and that there is no miscarriage of justice. *Cheffey v. Pennsylvania R.R. Co.,* 79 F.Supp. 252 (E.D.Pa.1943). However, the Court must abstain from interfering with the verdict unless it is quite clear that the jury reached a seriously erroneous result. The credibility of witnesses is peculiarly for the jury and the Court cannot grant a new trial merely because the evidence was sharply in conflict. *Lewin v. Metropolitan Life Insurance Co.,* 394 F.2d 608 (3d Cir. 1968). See generally 6A *Moore's Federal*

---

**16.** Hartford, in its reply to the motions to set aside the verdict, has stated that in the event judgment is entered against it, it will file such a motion pursuant to Rule 50 of the Federal Rules of Civil Procedure.

*Practice,* ¶ 59.08[5] at 59–159 (2d Ed. 1974). In a case such as this, the main function of the jury is to determine the credibility of the witnesses, i.e., what testimony is to be believed. *Lind v. Schenley, Inc.,* 278 F.2d 79 (3d Cir. 1960). In this case, University Marketing alleged that North Jersey and Universal, the two corporations involved in this transaction, made and breached an implied warranty that it had authority to bind Hartford for advertising space in the campus calendar, and that North Jersey, Universal, Mr. Citarelli and Mr. Delli Santi tortiously misrepresented their authority to bind Hartford. Implied warranty of authority is defined as follows:

> A person who purports to make a contract, conveyance or representation on behalf of another who has full capacity but whom he has no power to bind, thereby becomes subject to liability to the other party thereto upon an implied warranty of authority, unless he has manifested that he does not make such warranty or the other party knows that the agent is not so authorized. *Restatement of Agency (Second)* § 329.

A tortious misrepresentation of authority is defined as follows:

> A person who tortiously misrepresents to another that he has authority to make a contract, conveyance, or representation on behalf of a principal whom he has no power to bind, is subject to liability to the other in an action of tort for loss caused by reliance upon such misrepresentation. *Restatement of Agency (Second)* § 330.

The evidence in the case showed that on June 12, 1972 a meeting took place in New York City at the office of Mr. Hegyi between Mr. Citarelli, Mr. Delli Santi and Mr. Evans, who represented Universal and North Jersey, and Mr. Oberwager of University Marketing; that Mr. Citarelli told Mr. Oberwager that Universal represented Hartford for the purpose of mass merchandising insurance; that the participation of Hartford in the campus calendar was discussed and that Mr. Oberwager was told by Mr. Citarelli to work out the details with Mr. Evans; that Mr. Evans gave Mr. Oberwager his card which stated that he represented Universal and that the telephone number of Universal was the same as that of North Jersey; that on June 15, 1972 Mr. Evans telephoned Mr. Oberwager and told him that Hartford would participate in the campus calendar at a price of $51,000.00; that University Marketing ordered paper for the campus calendar and arranged its Fall 1972 calendar to include advertising space for Hartford; that University Marketing had numerous discussions with Mr. Evans and Mr. Citarelli, who represented North Jersey and Universal, in connection with the mechanical requirements of Hartford's participation in the campus calendar; and that neither North Jersey, Universal nor Mr. Citarelli ever had authority to bind Hartford to a contract for advertising space in the campus calendar and in fact were specifically instructed by Hartford that it would under no circumstances assume financial responsibility for the advertising contract. From the record in the case, we have determined that the evidence in connection with the allegations against North Jersey, Universal and Mr. Citarelli is more than sufficient to sustain the jury's verdict and that its finding does not constitute a miscarriage of justice.

University Marketing has also filed a motion for a new trial on the issue of damages. Following the jury's findings that North Jersey and Universal had breached an implied warranty of authority and that North Jersey, Universal and Mr. Citarelli had tortiously misrepresented their authority, the trial of the damage issue commenced. The evidence presented by the plaintiff was that the contract for advertising space in the campus calendar was for $51,000.00, that the plaintiff's costs for printing the campus calendar were fixed, that there would have been no extra expenses to the plaintiff had Hartford participated in the campus calendar and that no saving was realized because the Hartford advertisement was not printed. (N.T. 7–22, 7–65). In addition, Mr. Oberwager testified that University Marketing incurred expenses for late work of $1,512.00 as a result of not receiving copy of the Hartford advertisement. (N.T. 7–26 to

7–27). The plaintiff brought in no books or records of University Marketing relating to the Fall 1972 campus calendar. The testimony of Mr. Oberwager also revealed that the Hartford advertisement was to appear on four pages of the Fall 1972 campus calendar and as a result of Hartford's failure to participate in the Fall 1972 campus calendar, there were two blank spaces on the calendar for "doodles". At the close of the damage portion of the case, the jury returned a verdict for the plaintiff for $26,300.00.

Plaintiff contends that the award of $26,300.00 is against the weight of the evidence and that it should be awarded a new trial as to damages. In ruling on a motion for a new trial based upon the inadequacy of the jury's award of damages, the Court must apply the same standard as in determining whether a liability verdict is against the weight of the evidence.[17] The Court is not free to set aside the verdict merely because it may have awarded a different amount of damages but may do so only if the proceedings have been tainted by appeals to prejudice or if the verdict, in light of the evidence, is so unreasonable that it would be unconscionable to permit it to stand. *Tann v. Services Distributors, Inc.*, 56 F.R.D. 593 (E.D.Pa.1972), aff'd 481 F.2d 1399 (3d Cir. 1973). Wright and Miller, *Federal Practice and Procedure*, § 287 at 51–52.

University Marketing argues that there is no rational basis upon which the jury could have arrived at a verdict of $26,300.00 because the evidence is uncontradicted that the contract price was $51,000.00 and that it is also uncontradicted that University Marketing realized no savings because Hartford did not advertise. However, it is elementary that the credibility of witnesses is for the jury and the jury may accept or reject such testimony as it deems proper, even though the testimony is uncontradicted and unrefuted. *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620,

64 S.Ct. 724, 88 L.Ed. 967 (1944); *Rhoades, Inc. v. United Air Lines, Inc.*, 340 F.2d 481 (3d Cir. 1965); *Weinstein v. Stryker*, 267 F.Supp. 34 (E.D.Pa.1967). The testimony of University Marketing established that the Hartford advertisement was to occupy four spaces on the campus calendar. However, as finally printed, the calendar contained only two blank spaces for "doodles". Although Mr. Oberwager testified that the calendar contained two gratuitous advertisements in place of two of the anticipated Hartford advertisements, this testimony was unsupported by any books or records of University Marketing. The jury may well have believed, as the defendants argued, that University Marketing was paid for these advertisements or obtained some financial benefit therefrom. On this basis an award of $26,300.00 would be justified as constituting one half of the damages claimed by University Marketing, i.e., $51,000.00 contract price plus $1,512.00 in late charges. Furthermore, it was brought out in the testimony that the copy for the advertisement was never submitted to University Marketing and that no work was performed by it nor were any expenses directly incurred by it in connection with the preparation of the advertisement in question. This likewise may have served as a basis for the jury's verdict. We cannot therefore conclude that the jury's verdict is a miscarriage of justice.

Accordingly, the following Order is entered:

## ORDER

AND NOW, this 19th day of May, 1976, it is hereby ORDERED as follows:

(1) The plaintiff's motion to set aside the verdict and judgment and to enter the verdict and judgment against defendant Hartford is DENIED;

(2) The motion of defendants North Jersey Insurance Agency, Inc., Universal Insurance Services, Inc. and Vincent Citarelli

---

**17.** We have reviewed the standard which must be applied by a court in determining whether a verdict is against the weight of the evidence earlier in this opinion. We will apply the same standard here.

for judgment notwithstanding the verdict is DENIED;

(3) The motion of defendants North Jersey Insurance Agency, Inc., Universal Insurance Services, Inc. and Vincent Citarelli for a new trial is DENIED; and

(4) The plaintiff's motion for a new trial on damages only is DENIED.