Robinson et al. *v.* Stover, Appellant.

Argued October 7, 1935.   Before FRAZER, C. J., KEP-
HART, SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*James G. Marks,* with him *Marshall & McCandless,* for
appellant.

*Zeno Henninger,* of *Henninger & Ehrman,* with him
*Murrin & Murrin* and *Galbreath & Braham,* for appel-
lees.

OPINION BY MR. JUSTICE BARNES, January 6, 1936:

The plaintiffs, appellees, were the owners of a seventy-
five acre farm situated in Oakland and Centre Town-
ships, Butler County, Pennsylvania, which was under-
laid by a vein of coal.   On May 11, 1922, they entered
into an agreement of lease with defendant, granting to
him the exclusive right to mine and remove all the coal
in and under the said lands.   The agreement provided,
inter alia, that appellant should pay five cents a ton
for the coal, and should have the right to erect tip-
ples, buildings, railroads, sidings and fixtures necessary
for the removal of the coal.   The controlling question
in this appeal arises under the following provision in
the agreement, which, in this industry, is known as "a
wheelage clause": "Second party [defendant] agrees

to pay one-half (½c) cent for each and every 2,000 pounds of coal (run of mine unscreened) mined on other lands and brought, hauled or transported over, through or under the land herein described. It is understood that the coal under the land described in this lease shall be removed (so far as practicable, so as not to retard development) before coal from other lands be conveyed over, through, or under the land herein described."

Following delivery of the agreement, the defendant promptly entered upon the lands, and continued operation for the removal of the coal thereunder until May 25, 1931, when all the coal had been removed, and the vein under plaintiffs' land had become exhausted. Defendant faithfully made payment of the stipulated royalty or rent (as it is called in the agreement) on all such coal mined and removed.

Adjoining the lands of the plaintiffs were other lands from which defendant was engaged in mining and removing coal.

For the removal and marketing of coal mined from plaintiffs' lands, and from the adjoining lands, defendant constructed a tipple on the adjoining land, and as a necessary part thereof built a railroad switch, the blind end of which extended onto the lands of the plaintiffs several hundred feet. Upon this switch cars loaded at the tipple with coal were placed or stored to await their withdrawal to the main line of the Bessemer & Lake Erie Railroad.

Plaintiffs alleged that, without their notice or knowledge, defendant had transported from 1926 over their lands (i. e., over and upon the switch) large quantities of coal mined on the adjoining lands. On September 1, 1931, they demanded a statement of account of all the coal so transported, and payment of the agreed one-half cent per ton for wheelage.

Upon the refusal of defendant to make payment, on May 27, 1932, plaintiffs brought this action of assumpsit to recover the payments claimed, with interest due there-

on. The defendant averred that the lease fully author-
ized and gave him the right to construct a switch, coal
tipple or railroad sidings, and maintain the same on the
lands of the plaintiff, necessary or convenient for the
shipping of coal mined under the contract, or of other
coal belonging to him. To sustain his contention that no
compensation was to be paid for this privilege of wheel-
age, defendant relied upon a provision in the lease, read-
ing as follows: "It is further agreed that a right-of-way
is hereby granted, for the removal of said coal, over the
above-described tract of land for railroads to reach the
markets, and railroad sidings necessary or convenient
for the shipping of any coal mined under this contract,
. . . with the right to the party of the second part to
erect and maintain on said described premises, such tip-
ples, buildings, and fixtures as may be found necessary
or convenient for the mining and removal of the coal
under the described premises and other coal belonging
to the parties of the second part, their heirs or assigns."

At the trial, in lieu of taking testimony, the parties
submitted in evidence an agreed statement of facts in-
cluding therein a calculation by year from 1926 to 1933,
inclusive, of the coal mined on other lands, and trans-
ported over and stored upon the switch located on
plaintiffs' lands. The calculation also computed the in-
terest from the due date of each monthly wheelage pay-
ment to that of trial. By this calculation, the royalties
under the wheelage clause amounted to $3,192.45, with
interest of $966.15 added, making the total amount in
the sum of $4,158.60. It was made a condition that the
calculations were not intended as admissions of liability.

The stipulation contained an agreed statement of the
question for determination by the court, as follows: "It
is understood and agreed between the parties hereto that
the sole matter before the court is whether or not the
coal mined by the defendant on other lands than the
plaintiffs, as provided herein, comes within the clause in
Exhibit 'A' of the agreement heretofore offered in evi-

dence, which said agreement provides," etc., (quoting wheelage clause, as above).

At the trial the court directed a verdict for the defendant, and thereafter on plaintiffs' motion for judgment n. o. v. granted the motion and entered judgment in favor of the plaintiffs, for the payments claimed, with interest, amounting to $4,158.60. From the judgment defendant took this appeal.

In controversies of this nature it is proper to consider the situation of the parties. When, as in the present case, the owner of lands grants the right to another to remove minerals beneath the surface thereof, ordinarily he receives "rents or royalties"; when he permits minerals from adjoining lands to be transported over the surface of his own lands, he receives "wheelage" for the privilege granted. The consideration in the first instance is the marketing of his minerals, but in the latter case, as he has no interest in the removal of such foreign minerals, the consideration is the hindrance to his full enjoyment of the surface of his lands.

With this thought in mind we approach the interpretation of two clauses in this written agreement between the parties. It is the only question raised in this single assignment of error. In such case, the first inquiry must always be to ascertain the intention of the parties with respect to the matter in dispute, and the first recourse must be to the writing itself. A writing, in which only words of definite and precise meaning, as commonly understood, are used, free from ambiguity, is always its own best interpreter, since the language used best discloses and reveals the intention, object and purpose of the parties to it: Atherton v. Clearview Coal Co., 267 Pa. 425, 432.

The language of the two clauses in the writing before us clearly determines whether it was the intention of the parties that the defendant was or was not to pay for the right of wheelage. From the agreement it appears that the parties had in contemplation (1) coal mined on

plaintiff's lands, and (2) coal mined on adjoining lands and to be transported over plaintiffs' lands. The agreement fixed the royalty for the coal first mentioned, granted the necessary right-of-way, and right to erect, use and maintain the necessary and convenient constructions for both operations; and, finally, fixed the wheelage for the coal last mentioned. The wheelage clause in the contract is meaningless save when taken in connection with "other coal belonging" to defendant mined on adjoining lands, and transported over the right-of-way granted by plaintiffs. In bringing upon the lands of plaintiffs and in storing upon the switch constructed thereon the coal in cars which had been mined by defendant on other lands, the defendant brought himself clearly within the expressed terms of the wheelage clause of the contract and became legally bound to pay the agreed consideration for every ton transported over the lands of plaintiffs. It may be noted in passing that the switch constructed upon plaintiffs' lands consisted of several hundred feet (730 feet, to be exact) of railway, and it is not denied that it was a convenient use of a considerable portion of the surface of plaintiffs' lands. Undoubtedly the wheelage clause was intended to compensate plaintiffs for this substantial present right of use of their lands, so taken from them and given to the defendant.

If the construction of the contract urged by defendant were to prevail, the effect would be to eliminate the wheelage clause from the contract. Such interpretation cannot be adopted. As we pointed out in Camden S. D. & T. Co. v. Eavenson, 295 Pa. 357, 363: "The error of the court below consisted in *wresting the words* relied on from their subject-matter and obvious purpose. It is axiomatic that this can never be done; all contracts must be construed with reference to their subject-matter and obvious purpose, and, however general the language may be, their scope and effect are necessarily limited and controlled thereby." To the same effect we held in Har-

rity v. Continental-Eq. T. & T. Co., 280 Pa. 237, 241: "A contract must be so construed, if possible, as to give effect to all of its provisions: Vulcanite Paving Co. v. Phila., 239 Pa. 524; Thompson v. Craft, 238 Pa. 125; McMillin v. Titus, 222 Pa. 500; Knickerbocker Trust Co. v. Ryan, 227 Pa. 245. In the last case, Mr. Justice MESTREZAT, for the court, says: 'It is a rule of universal application that in construing a contract each and every part of it must be taken into consideration and given effect if possible, and that the intention of the parties must be ascertained from the entire instrument. . . . An interpretation will not be given to one part of a contract which will annul another part of it or produce absurd results (Tustin v. Phila. & R. C. & I. Co., 250 Pa. 425), nor can a clear provision in a written instrument be overcome by one that is doubtful: Yost v. Ins. Co., 179 Pa. 381, 385; Sheetz's App., 82 Pa. 213." See also Daniels v. Lehigh Port. Cement Co., 281 Pa. 353, 356, where we used this language: "The words preceding the restriction of liability refer clearly to the minimum royalty, as do those which follow, and there is no justification for *wresting* the clause referred to from its given position, and considering it as if also inserted after the first portion of the sentence which fixes responsibility where any stone is quarried and removed. . . . The contract should be so interpreted as to give force to both provisions for rentals, and particularly so when this is the reasonable explanation of the words employed." We had before us for interpretation a coal mining lease in Tustin v. Phila. & R. C. & I. Co., 250 Pa. 425. The exact question was whether the minimum monthly royalty or rental fixed in said lease included the wheelage charge on coal mined on adjoining lands and carried over the demised premises, or whether the wheelage charge was to be paid in addition to the minimum royalty required under the lease. Mr. Justice MESTREZAT, in construing these provisions of the lease, there said (page 434): "It is a rule of construction that an interpretation will not

be given one part of a contract which will annul another part of it or produce absurd results. This would obviously occur, as pointed out in the argument, if the appellant's contention be sustained and the phrase 'mined and shipped from the demised premises' be construed as including coal mined on adjoining lands and carried through the leased premises, as it would practically nullify the minimum royalty provision."

We think no other reasonable conclusion can be drawn from the terms and manifest purpose of the two clauses in question, than that defendant was obligated to pay for the right of wheelage over plaintiffs' lands if he elected, under the contract, to avail himself of their use. The defendant did use plaintiffs' lands to move coal from other lands to the railroad, and he is liable for the agreed wheelage payment, which, by his written agreement, he undertook to pay. This interpretation, since the two clauses in question are not repugnant, harmonizes all the provisions of the contract as required by the long-established rule of construction of contracts: Heningkamp v. Valley Smokeless Coal Co., 274 Pa. 186.

As to the statute of limitations, the record discloses that wheelage for the year 1926 is the earliest item claimed. The suit was entered on May 27, 1932, and is clearly within the statute.

The lower court allowed interest from the due date of each monthly wheelage payment to the date of trial. In the absence of an express agreement, interest should have been allowed by the court below only from the date of demand which was stipulated in the statement of facts as September 1, 1931. See Thompson v. Schock, 254 Pa. 585; O'Neill v. Burnett, 263 Pa. 216.

The judgment, so modified with respect to the interest item, is affirmed. Costs to be paid by appellant.