Gregory *v.* Fassett et al., Appellants.

600

Argued March 29, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*John P. Vallilee,* for appellants.

*Donald Reuter,* with him *Duvall & Reuter,* for appellee.

Opinion by Ross, J., July 21, 1955:

These are separate appeals by husband and wife from the refusal to open a judgment entered against them by confession on a warrant of attorney contained in a judgment note given by them to the plaintiff.

In July 1946 the defendants desired to purchase a restaurant business from an Alice Nichols for the sum of $2,500. They lacked the funds however, so the plaintiff, a friend, agreed to finance the venture. The parties met at the office of plaintiff's attorney, and plaintiff gave his check for $2,500, made out to Alice Nichols, to defendants, in return for which there was delivered to the plaintiff a bill of sale. Plaintiff had that same day borrowed from his bank the sum of $2,-500 at six per cent. interest to cover this check. Plaintiff and defendants then executed a bailment lease which purported to lease the equipment to defendants at a $50 a month rental. The defendants also executed and delivered the $2,500 judgment note to plaintiff, payable in five years, upon which the instant judgment was entered. The bailment lease also contained an authorization to confess judgment for $2,500 as well as a five-year graded schedule (giving credit for rents previously paid at the various dates) at which defendants could purchase the property if they so desired. Arrangements were made to have the defendants make their monthly payments directly to the bank, to be applied to the plaintiff's loan there, and regular payments were made to the bank by defendants for some time, but they began to fall in arrears when business slackened. When the arrearages totalled $250 (five months' payments), the plaintiff sent his attorney to discuss the matter with defendants, and agreement was

then made to turn the equipment over to the plaintiff for liquidation. Plaintiff sold the equipment for $183, the best price available, and applied this sum to defendants' credit. Shortly before this liquidation, the plaintiff had entered judgment on the note. The judgment in the bailment lease appears never to have been entered. From 1948 when the judgment was entered until 1951 when the petition to open was filed, the defendants were ignorant of the judgment. Their attorney discovered it in making a title search, whereupon the instant proceedings were begun.

The petition to open alleges inter alia: (1) that the repossession of the goods by the plaintiff under the lease prevents plaintiff from recovering more than the arrearage of rent ($250, which defendants admitted was due and paid into court); (2) that it was specifically agreed between defendants and plaintiff's lawyer that the repossession and liquidation would be in full settlement of their obligation.

Plaintiff answered, asserting that the transaction was a loan by him to defendants with the judgment note as evidence thereof and the bailment lease as an added security device for his protection. He further asserted that the agreement concerning the repossession and liquidation was not in final settlement and discharge, but merely to salvage as much as possible from the situation and thereby reduce the defendants' indebtedness by that amount.

Our examination of the defendants' depositions alone indicates that the transaction was a loan with the bailment lease of the equipment as additional security for the note. The husband testified on direct examination: "Q. Just exactly what was said between George Gregory and you as nearly as you can remember—about this transaction at that time? A. Well, I told him about the restaurant being for sale and the

amount that was required to buy it. Q. How much was it? A. $2500.00 and he agreed to back me up in it. Q. What do you mean by his agreeing to back you up in it? A. He agreed to furnish the money to buy the equipment *and restaurant.*" (Emphasis supplied.) The wife testified: "A. . . . and when we had a chance to get this he wanted to loan us some money so we took it."

This testimony of defendants themselves clearly indicates that their interpretation of the transaction was a loan from plaintiff rather than an investment by him in the restaurant business, and a mere lease to them of the equipment with a note as security for the payment of the rent. Plaintiff never had been in the restaurant before these negotiations, and even at the time of the loan he did not investigate the condition of the restaurant and equipment. After the purchase he was in the place only on rare occasions and took absolutely no part in the management or operation, and received none of the profit and shared none of the expenses. It was run solely and completely by defendants. At the time the documents were executed in the office of plaintiff's attorney Alice Nichols was not present. Plaintiff's check, made out to her order, was given to Fassett, who delivered it to her and brought back the bill of sale executed to the plaintiff. The actual dealings were between Fassett and Nichols despite the fact that the money and bill of sale passed nominally between plaintiff and Nichols. The evidence further indicates that the equipment alone at the time of the loan was worth about $500, the remainder of the $2,-500 purchase price covering good will, intangibles and, of course, a profit for Alice Nichols. Had the plaintiff intended merely to lease the equipment to defendants, he would lose the good will and business which he paid for since the bailment lease covered only the

equipment. If this were an investment for plaintiff as defendants contend, he certainly would not pay for a *business* and then lease merely the *equipment*. Add to this the fact that plaintiff the same day borrowed the exact sum at six per cent. interest at the bank so that he could make this loan and undeniably we are led to the conclusion that the defendants desired to purchase a business and equipment and at their request the plaintiff financed the transaction for them. He could not hope to make a profit on the transaction for by its terms the amount of the note would exactly pay off his own loan at the bank. His attorney prepared the judgment note which the Fassetts executed and delivered as the primary obligation. In addition, the bailment lease of the equipment was prepared as some added security for the note. Since plaintiff never saw the equipment and knew nothing of its condition, it cannot reasonably be said that his primary objective in dealing with the defendants was a lease of this equipment.

An examination of the cases cited by defendants, *Rome Sales and Service Station v. Finch,* 120 Pa. Superior Ct. 402, 183 A. 54, and *Charlson's Furniture Co. v. Heigley,* 161 Pa. Superior Ct. 24, 53 A. 2d 878, illustrates their distinction. The facts in each case show that the only dealings involved a lease of equipment between a dealer and the defendant lessee. The rental in each covered the value of the goods leased and the judgment in each was entered on the lease itself. Here, although the lease contained a judgment provision, the judgment in question was entered on the separate note, which was the primary obligation. We must conclude that the lease was merely added security for the loan.

Defendants' second contention that the arrangement with plaintiff's attorney concerning the repossession and sale was to be a final discharge of their

obligation is equally without merit. Plaintiff's attorney testified that that was not true. The arrangement was merely that plaintiff would sell the equipment for the best price obtainable and apply the proceeds to the debt. The lower court specifically stated in its decision that it believed his testimony "for we have always found him highly credible". The matter of credibility was within its prerogative. Nor was it necessary for the court to hear the witnesses to determine credibility. From the cross-examination, the improbabilities and contradictions in defendants' testimony in the depositions the court could decide whether to believe or disbelieve. *Berkowitz v. Kass*, 351 Pa. 263, 40 A. 2d 691.

The husband appellant further contends that the judgment should be opened as to him because the negotiations regarding repossession took place between the wife alone and the plaintiff's attorney. He cites *Madden v. Gosztonyi Savings and Trust Co.*, 331 Pa. 476, 200 A. 624, to the effect that the mere fact of marriage does not constitute either of the parties an agent for the other to the extent of permitting either to terminate their interest in property. However, where the facts indicate that the one spouse is the agent of the other, or where the action of one spouse is acquiesced in by the other when he or she should have objected, then, of course, he or she is bound thereby under the general principles of agency. Here it is admitted that the wife purported to act for both and that while the conversation was in progress between her and plaintiff's attorney the husband was present and overheard what was said. He testified as follows: "Q. Were you present, or did you overhear any of the conversation between your wife and Mr. Wilson [plaintiff's attorney] concerning the termination of this entire matter and the turning over of the equipment to Mr. Gregory? A. Yes." The husband thereafter acted consistently

with the arrangements that were made and voiced no objection nor did he take any contrary action. "An affirmance of an unauthorized transaction may be inferred from a failure to repudiate it." *Restatement, Agency,* section 94; *Baumgartner v. Whinney,* 156 Pa. Superior Ct. 167, 39 A. 2d 738. This contention is, therefore, without merit.

It is well settled in our law that it is within the sound discretion of the court whether a judgment will be opened, and whether it is opened or not depends upon the court's application of equitable principles. We will not reverse unless there is a clear abuse of this discretion (*Sugarman v. Baldini,* 161 Pa. Superior Ct. 136, 53 A. 2d 874), and as stated in *Mielcuszny v. Rosol,* 317 Pa. 91, 176 A. 236, at pages 93-94: "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or illwill, as shown by the evidence or the record, discretion is abused." A refusal to open a judgment where the petitioner has produced evidence, which if true would afford a defense, is not even sufficient of itself to constitute an abuse of discretion. *Poelcher v. Poelcher,* 366 Pa. 3, 76 A. 2d 222. Here although there is some evidence which would support defendants' contentions, we cannot find that the court abused its discretion in refusing to open the judgment.

Order affirmed.