**MURSOR BUILDERS, INC., Plaintiff,**

v.

**RODDY REALTY, INC., and Small Business Administration, Defendants.**

Civ. A. No. 76–1157.

United States District Court, M. D. Pennsylvania.

Nov. 3, 1978.

1318

Donald Brobst, Joseph J. Savitz, of Rosenn, Jenkins & Greenwald, Wilkes-Barre, Pa., for plaintiff.

James W. Walker, Asst. U. S. Atty., Scranton, Pa., for defendants.

## MEMORANDUM

HERMAN, District Judge.

A non-jury trial was held in the above-captioned matter on June 5, 1978. The following are the Court's findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Mursor Builders, Inc. (hereinafter Mursor) is a general contractor engaged in the construction business with an office in Forty Fort, Luzerne County, Pennsylvania.

2. The Small Business Administration (hereinafter SBA) is an Agency of the United States of America with its local district office located at Suite 400, One Bala Cynwyd Plaza, 231 St. Asaphs Road, Bala Cynwyd, Montgomery County, Pennsylvania.

3. Roddy Realty, Inc. (hereinafter Roddy) is a Pennsylvania corporation with its office located at 468–488 Northampton Street, Edwardsville, Luzerne County, Pennsylvania.

4. Roddy was the owner of property improved with two commercial buildings known as "Wayne Building" and "Firestone Building" located at 468–488 Northampton Street, Edwardsville, Luzerne County, Pennsylvania (hereinafter said property referred to as the "premises").

5. On June 23, 1972, the said premises were severely damaged in the Hurricane Agnes Flood and required restoration before they could be utilized for commercial or industrial purposes.

6. Subsequent to said flood and shortly thereafter, Roddy contacted Mursor for the purpose of having its flood-damaged premises restored.

7. On November 1, 1972 SBA authorized a disaster loan to Roddy in the amount of $856,800, $294,800 of which was to refinance a mortgage encumbering the real estate owned by Roddy and $526,000 of which was to be used to repair the damaged real estate owned by Roddy.

8. On December 31, 1972 a closing was held with regard to the aforesaid loan, wherein Roddy executed a promissory Note in the amount of $856,800 which was secured by an assignment of bond and mortgage from Susquehanna Savings and Loan Association and a mortgage in favor of SBA in the amount of $856,800 which mortgage was recorded with the Recorder of Deeds of Luzerne County, Pennsylvania on January 8, 1973.

9. On January 10, 1973, SBA ordered from the United States Treasury and disbursed to Roddy on its loan account $494,800 and on January 18, 1973 SBA ordered from the United States Treasury and disbursed to Roddy on its loan account $150,000.

10. On April 12, 1973, SBA amended its loan authorization such that the loan was increased from $856,800 to $1,070,800.

11. Between the period from July 24, 1972 to February 13, 1973 Mursor performed work upon Roddy's aforesaid buildings known as "Wayne Building" and "Firestone Building."

12. Following completion of the work by Mursor on February 13, 1973, Mursor submitted its invoice to Roddy in the amount of $288,548 representing the unpaid balance due for the work performed by Mursor upon the premises.

13. Roddy questioned the detail of certain charges involved in the builder's billing and did not want the SBA to release the full amount as submitted in the invoice.

14. John B. Look, counsel for the SBA in charge of the Roddy loan, was concerned that a mechanic's lien by Mursor would destroy the first priority mortgage of the SBA.

15. An agreement was negotiated in the offices of the SBA between the three parties, Roddy, Mursor, and the SBA.

16. On June 11, 1973 Roddy and Mursor entered into an agreement under which Mursor agreed to discontinue any mechanic's lien actions and to obtain a waiver of mechanic's liens from its subcontractors, and Roddy agreed to cause to be released by the SBA from loan proceeds to the builder the sum of $250,000 and Roddy further agreed to authorize SBA to hold in escrow the sum of $38,548 until such time as Roddy and Mursor agreed or until a court of law or arbitrator determined the amount to be paid by Roddy to Mursor.

17. John B. Look, Esquire, an attorney-employee of SBA who was engaged full time in closing disaster loans, signed the aforesaid agreement on behalf of SBA, consenting to have the SBA hold said sum of $38,548 in escrow until such time as the dispute between Mursor and Roddy as to the amount owed by Roddy to Mursor was resolved in accordance with the agreement.

18. At the time John B. Look executed the agreement dated June 11, 1973 on SBA's behalf, and at all times subsequent thereto, he believed that the execution of said documents was within the scope of his authority and of the SBA's loan authorization and that he duly and properly effectuated the loan commitment and consent given by SBA.

19. At the time John B. Look executed the agreement dated June 11, 1973, he believed that he had the authority to execute said document on behalf of the SBA and represented that he had such authority to Mursor and Roddy.

20. In reliance on the aforesaid agreement wherein it was agreed that $250,000 of the loan proceeds would be released immediately by the SBA to Mursor for the work Mursor had done, and the remaining $38,548 of the loan would be held in escrow by the SBA until such time as it had been determined that said monies were owing to Mursor by Roddy, Mursor agreed to have its mechanic's lien claims filed against Roddy's premises in the Court of Common Pleas of Luzerne County, marked satisfied, and did in fact, cause same to be satisfied of record.

21. Pursuant to the June 11, 1973 agreement and at SBA's demand to do so, Plaintiff satisfied of record three mechanic's liens claims on June 25, 1973 which it had against Roddy and presented to SBA various executed affidavits and a written opinion of Plaintiff's then-counsel, John Doran, Esquire, verifying that there were no further mechanic's lien claims of record against Roddy, and that the time had expired for the filing of further mechanic's lien claims by any creditors of Roddy who had worked on the subject premises.

22. John Look, Esquire, would not agree to consummate the June 11, 1973 agreement and release the $288,548 loan proceeds until Mursor provided SBA with the aforesaid assurance that no mechanic's lien would have priority over SBA's mortgage and that SBA's mortgages would have a first lien position.

23. On June 25, 1973, SBA ordered from the United States Treasury and disbursed nine (9) checks, co-payable to Roddy and various contractors, totalling $324,452.

24. One of the aforesaid checks disbursed on June 25, 1973 was made co-pay-

**1320**

able to Roddy and Mursor and was in the amount of $250,000.

25. At no time has the SBA ever ordered any check or combination of checks, made payable to Roddy or made co-payable to Roddy and another party, from the U.S. Treasury, totalling $38,548.

26. At no time has the SBA ever disbursed any check or combination of checks, made payable to Roddy or made co-payable to Roddy and another party, from the U.S. Treasury totalling $38,548 into any escrow account for or on behalf of Roddy.

27. The SBA has never informed or advised John B. Look that he lacked authority to execute the agreement dated June 11, 1973 on behalf of the SBA.

28. SBA had granted to Roddy a $1,007,-800 mortgage filed of record on March 1975, and had disbursed on behalf of said mortgagor all of the mortgage funds except for the sum of $38,548, the exact sum set forth in the June 11, 1973 agreement which SBA was to hold as escrow agent.

29. On the 22nd day of July, 1976, Mursor filed a complaint No. 7164 of 1976 in the Court of Common Pleas of Luzerne County, against Roddy and SBA; on August 19, 1976, Mursor obtained a judgment against Roddy in the full amount of its claim for $38,548. SBA then caused this action to be removed to the United States District Court for the Middle District of Pennsylvania to Civil Action No. 76–1157.

30. By virtue of the default judgment taken by Plaintiff against Defendant, Roddy, a determination had been made of Roddy's debt to Plaintiff in the sum of $38,548 in accordance with the June 11, 1973 agreement.

31. The SBA has entered other escrow agreements.

32. The June 11, 1973 agreement was in the SBA file and it was never rejected by John B. Look's superiors in the SBA.

33. On May 30, 1975, the SBA cancelled the undisbursed loan balance on the Roddy loan account by an amount of $38,548.

CONCLUSIONS OF LAW

1. John B. Look had the apparent authority to execute the agreement dated June 11, 1973, on behalf of the SBA, and the SBA was thereby bound by the agreement and obligated to act as escrow agent with respect to the $38,548 as set forth in the agreement.

2. Mursor's relinquishment and satisfaction of its mechanic's lien claims at the request of SBA and the assurance given by Mursor's then-attorney, John Doran, Esquire, on behalf of Mursor to SBA that there were no liens which would deprive the SBA of a first lien priority position constitute consideration for SBA's promise to hold the $38,548 in escrow until such time that a court of law or arbitrators decided that said monies were owing to Mursor by Roddy or until such time Roddy and Mursor agreed said monies were owing.

3. Under the terms of the agreement, Mursor was entitled to receive the money from the escrow agent upon a determination or agreement as to the amount due and the entering of the default judgment in the amount of $38,548 on August 19, 1976 in the Court of Common Pleas of Luzerne County against Roddy satisfied this requirement.

4. Mursor is entitled to recover the sum of $38,548 plus interest on this amount at 6% from August 19, 1976.

DISCUSSION

The Defendant SBA raises a number of issues in the trial brief that warrant discussion by the Court. The issues concern the effect of the escrow agreement, whether consideration was given by the Plaintiff for the promise of the SBA to act as escrow agent, the authority of its employee John Look, and the amount due the Plaintiff under the agreement.

■ SBA initially argues that the wording of the escrow agreement imposed no duty on the SBA to act as escrow agent. The language of the agreement reads "it is agreed that the owner shall cause to be released by the SBA from loan proceeds to the builder, the sum of $250,000 and that

the owner shall authorize the SBA to hold in escrow the sum of $38,548 which sum shall be held until such time as the owner and builder herein mutually agree upon the amount to then be paid. . . ." Defendant SBA asserts that Roddy could not "authorize" the SBA to deposit funds into an escrow account. While this may be true, it avoids the crucial fact that the attorney representing the SBA, John Look, consented on behalf of the SBA to "carry out duties as escrow agent". Consequently, whether Roddy had the power to "authorize" is of no import as the agreement was signed by a representative of the SBA.

Furthermore, a reading of the escrow agreement shows the intended effect of the word "authorize" as used by the parties. The SBA only released funds on the completion of the work for which the loan was provided, it did not give the loan funds to the borrower Roddy in a lump-sum for him to disburse. Interpretation of the agreement simply shows that the owner was satisfied that at a minimum $250,000 was due the Plaintiff but that he did not want the full amount of the invoice paid as he disputed part of the remainder. The SBA was merely following its procedure that an order for disbursement of funds would not be made until SBA was satisfied that improvements were made on the property to the extent of the requested disbursement. As to the $38,548, the SBA had authorized a loan for repairs undertaken by the Plaintiff for the amount of $288,548. If the owner had not disputed the bill of the Plaintiff, the full amount authorized under the loan would have been paid to the Plaintiff. So the owner, in effect, requested the SBA to hold the $38,348 until the balance due could be determined and the SBA accepted the duty to act as escrow agent until that time.

SBA notes that the typical escrow transaction involves three parties, a lender, a borrower, and an escrow agent. It raises the question whether Roddy could empower the lender SBA to disburse funds on Roddy's loan account to the SBA as escrow agent. Like in the above discussion, it was not the acts of Roddy that are determinative but rather the acts of the SBA who willingly consented to hold funds of the loan account as escrow agent. If the SBA's agent had authority or the apparent authority and if consideration was indeed exchanged for the SBA's promise to act as escrow agent, then the SBA was bound by the agreement to act as escrow agent in accordance with the terms of the agreement.

The second issue presented by SBA's brief is whether SBA was bound by the terms of the June 11, 1973 agreement. SBA argues that it was not a party to the contract as the contract states it was between Mursor and Roddy. It further points to the placement of the signatures as the SBA's signature appears after recitation regarding the responsibilities of the SBA to carry out the duties of an escrow agent. The language of the agreement again, however, is at odds with these arguments. The SBA signature appears after the following: "The Small Business Administration, in consideration of the foregoing agreement and in recognition of that agreement, does hereby consent to carry out the duties as escrow agent as therein provided." It is a well-settled rule that in construing a contract the intentions of the parties governs and that intention must be ascertained from the entire instrument. *See e. g., Waldman v. Shoemaker,* 367 Pa. 587, 80 A.2d 776 (1951); *Robinson v. Stover,* 320 Pa. 308, 182 A. 145 (1936). The intention of the parties to the present agreement are clear. Roddy and Mursor entered the agreement to create an escrow and the SBA agreed to act as the escrow agent over funds authorized and undisbursed on the loan to Roddy. Certainly, the agreement shows the intention on the part of the SBA to be bound by the terms of the agreement.

In this case, the proper procedure for creating an escrow was followed by the parties. The June 11 agreement used the term "escrow" and set forth the sum to be held by the escrow agent. A condition was specifically set forth in the agreement, the occurrence of which would trigger the escrow agent's duty to release the funds. *See, Angelcyk v. Angelcyk,* 367 Pa. 381, 80

A.2d 753 (1951). The signing of the agreement by the SBA placed it in the position of being an agent of both Mursor and Roddy with respect to its duties to deliver the money in the happening of an event, the determination of the amount due Mursor for the work performed for Roddy. The SBA was a neutral party and therefore was a proper party to serve as escrow agent as it willingly agreed. From the above it is clear the SBA was obligated to act as escrow agent in accordance with the agreement if employee Look had the required authority.

■ While the SBA was bound to act as escrow agent, it argues that it was not obligated by the agreement to disburse monies from the U. S. Treasury or to deposit monies in an escrow account and that such a transfer of funds is fundamental to the existence of an escrow. Although no provision was made in the agreement for the disbursement of funds to an escrow account, this appears to have been due to the mechanics of the SBA's operations. After a loan was authorized, the SBA counsel would order payments in installments as work was completed from the Treasury Department. The Plaintiff's understanding, as testified to by the attorney who negotiated the agreement with the SBA, was that the SBA would hold the $38,548 for subsequent release in accordance with the agreement. That is, it was Plaintiff's reasonable understanding that the SBA, who had the power to disburse or hold the funds authorized under the loan, was capable of performing the duties of escrow agent with respect to the disputed amount of $38,548. It is clear that SBA counsel Look believed that no further transfer of funds was necessary for it to perform its function as escrow agent, and considering the fact that the agreement was negotiated in the office of the SBA, that Look signed the agreement, and that the agreement was approved by Look's superiors, it seems the SBA should not now be able to assert that no escrow arrangement was intended because the funds were not placed in a separate escrow account.

It is true that the existence of an escrow typically depends on the transfer of the escrow instrument into the hands of a third party as depository. *In Re Dolly Madison Industries, Inc.,* 351 F.Supp. 1038 (E.D.Pa. 1972). In this case, however, the SBA had complete control over the monies authorized under the loan. Therefore, no transfer to an escrow agent was required. The SBA's control of the designated monies therefore must be considered sufficient in itself. It must be remembered that the SBA could have suggested to the other parties that a third party act as escrow agent. Then the $38,548 would have been disbursed to that party who would have further released the funds in accordance with the escrow agreement of the parties. Instead, the SBA through attorney Look apparently desired to maintain complete control over the transaction and volunteered the SBA to act as escrow agent. Since the SBA had total control over the funds and consented to act as the escrow agent, the failure to place the funds in a separate escrow account due to their own acts cannot destroy the obligation they assumed. It is obvious the parties assumed the SBA's power over the funds was sufficient for it to act as escrow agent and that is how the contract should be interpreted. As escrow agent, the SBA was bound to follow the terms of the escrow agreement. *See Gulf Petroleum v. Collazo,* 316 F.2d 257 (1st Cir. 1963); *Zweifach Scranton Lace Co.,* 156 F.Supp. 384 (M.D. Pa.1957).

■ The next question the Defendant SBA raises is whether there was consideration given on the part of the Plaintiff for the June 11, 1973 agreement. It argues that Plaintiff's discontinuation of the mechanic's lien was a failure of consideration as the SBA loan had priority over the mechanic's liens. The complex questions of which lien had priority in fact need not be resolved as the evidence showed SBA required Mursor to discontinue the mechanic's lien before it would proceed with the disbursements. The release or surrender of a disputed claim or right is sufficient consideration to support an agreement. *See, Co-*

hen v. Subin, 452 Pa. 447, 307 A.2d 845 (1973); RESTATEMENT OF CONTRACTS 2d § 76B. Therefore, Mursor's relinquishment of its mechanic's liens at the request of the SBA was clearly sufficient consideration to support an agreement between the parties.

The final issue involving the validity of the agreement is whether the SBA should be held bound by the acts of its employee Look. SBA asserts that Look exceeded his authority in entering the contract on behalf of the SBA. As noted in the Findings of Fact, attorney Look had responsibility over the disbursements of the Roddy loan. Look was never advised by the SBA that he did not have authority to enter the agreement, and superiors of the SBA never notified either Roddy or Mursor that the agreement was improper. The application of the law to these facts leads to the conclusion that the SBA should be held bound by the acts of its agent Look.

Look as an employee of the SBA fits the commonly understood meaning of agent which is a person who has undertaken to act for another and to be controlled by the other in so acting. In an agency relationship, liability may be imposed on the principal for the acts of an agent because of actual authority, apparent authority, or estoppel. Authority to bind a principal is based upon the principal's express or implied manifestations of the scope of responsibility. Apparent authority results from conduct by the principal which causes a third person reasonably to believe that a particular person has authority to enter negotiations or make representations as his agent. To bind the principal under the doctrine of apparent authority, some act or manifestations of the principal must be shown that creates the apparent authority. See, University M & C v. Hartford Life & Accident Insurance Co., 413 F.Supp. 1250 (E.D.Pa.1976). Estoppel principles are used to impose liability when acts of the principal lead one to detrimentally rely on the existence of the agency. As noted from the above discussion, there are elements of all three doctrines as the agent Look had re-

sponsibility over disbursement of the loan and the June 11 agreement concerned effectuating the loan, the SBA knowingly allowed the agreement to continue, and the Plaintiff Mursor detrimentally relied on the agreement by changing its position.

The doctrine that most clearly imposes responsibility on the SBA is that Look had the apparent authority to enter this agreement on behalf of the SBA. If Look had the apparent authority to enter the agreement, the SBA would be bound by it whether his acts were authorized or unauthorized. " 'Apparent authority' is the power to bind a principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted to the agent." Apex Financial Corp. v. Decker, 245 Pa.Super. 439, 369 A.2d 483, 485 (1976); Revere Press, Inc. v. Blumberg, 431 Pa. 370, 246 A.2d 407 (1968). "The test for such is whether a man of ordinary prudence, diligence and discretion would have a right to believe and would actually believe that the agent possessed the authority he purported to exercise." Id. 245 Pa.Super. at 443, 369 A.2d at 485–86; Murphy v. Beverly Hills Realty Corp., 98 Pa.Super. 183 (1930). In applying these principles to the facts of this case, it is evident that the SBA's conduct and manifestations were sufficient to create a reasonable impression in the mind of Mursor that the agent Look had sufficient authority to enter the agreement.

Employee Look was given authority to take measures that would effectuate the loan authorization. The problems concerning disbursement were delegated by the SBA to Look and he assumed the responsibility by conducting negotiations in his office on the amount that was to be disbursed to Mursor. The agreement in question was placed in the Roddy file and as late as June 2, 1975, the loan officer acknowledged the existence of the escrow agreement without objection. Neither attorney Look nor the other parties were ever advised by the SBA that the actions of Look were unauthorized. From the reading of these facts it is obvious that an atmosphere of authority was placed

1324

around Look's actions by the SBA. It was only after suit was filed that allegations were made that Look's actions were unauthorized.

Factors are therefore present in this case that the Pennsylvania courts have used as indictees of apparent authority. Prior dealings had taken place with Roddy and Look and the SBA had approved escrow arrangements in the past. *See Apex Financial Corp. v. Decker, supra.* The act of agent Look in entering the agreement was not so extraordinary that would place the Plaintiff on notice of possible unauthorized action. In fact, one could reasonably infer that Look, as counsel in charge of disbursements, had authority to take the measures necessary to effectuate the loan. In *East Girard Savings and Loan Association v. Houlihan,* 373 Pa. 578, 97 A.2d 23 (1953) the court held that a manager of loan association had the apparent authority to enter an agreement with a mortgagor as to payment of arrearages on the basis that one is justified in inferring from a position that the person has the authority to enter the kind of action expected to be conducted by the position. In the present case, Mursor was likewise justified in assuming that an attorney in the position of Look had the authority to enter the escrow agreement. *See University Marketing and Consulting, Inc. v. Hartford Life and Accident Ins. Co.,* 413 F.Supp. 1250 (E.D.Pa.1976); *William B. Tanner Co., Inc. v. WIOO, Inc.,* 528 F.2d 262 (3d Cir. 1975).

Apparent authority can also be inferred from acts of the principal of affirmance. "Persons with whom the agent deals can reasonably believe that the agent has power to bind his principal if the principal knowingly permits the agent to exercise such power." *Continental-Writ Electronics Corp. v. Sprague Electric Co.,* 329 F.Supp. 959, 963 (E.D.Pa.1971); *Revere Press, Inc. v. Blumberg,* 431 Pa. 370, 246 A.2d 407 (1968). In this case, the SBA was aware of the action of agent Look, if not at the time of entering the agreement, at least shortly thereafter. The failure to repudiate acts that are unauthorized is an affirmance of the transaction. *University Marketing and*

*Consulting, Inc. v. Hartford Life and Accident Ins. Co., supra* at 1260; *Gregory v. Fassett,* 178 Pa.Super. 599, 116 A.2d 304 (1955). As noted above, the SBA never repudiated the agreement and therefore it can be construed as a ratification of the agreement as well as a manifestation of the authority of Look.

The SBA did not only acquiesce, but also, acted under the terms of the contract that they now argue was unauthorized. The mere acquiescence alone was sufficient to show consent to the acts of agent Look. *Gregory v. Fassett,* 178 Pa.Super. 599, 116 A.2d 304 (1955). The SBA went beyond this in that they paid the $250,000 in accordance with the escrow agreement and withheld the $38,548 as set forth in the June 11, 1973 agreement. By actually following the escrow agreement, the SBA in essence waived any objection that the agreement was unauthorized. From all these facts it seems clear that the SBA conducted itself as if Look had the authority to enter the escrow agreement and that Look had the apparent authority to bind them by it.

■ The apparent authority doctrine applies to the Federal Government in the same manner as it would apply to any other individual. *See Pierson v. United States,* 527 F.2d 459 (9th Cir. 1975); *Oman v. United States,* 179 F.2d 738 (10th Cir. 1950). Defendant SBA cites a number of cases for the proposition that the federal government is not bound by the representations of an agent without authority. In *United States v. Zorger,* 407 F.Supp. 25, 28 (W.D.Pa.) aff'd 546 F.2d 421 (3d Cir. 1976), the court stated the "United States is neither bound nor estopped by representations made by an agent without authority," but in that case there was no question that the alleged representations were well beyond the authority of the agent. Likewise the decision of *West Virginia Housing Development Fund v. Sroka,* 415 F.Supp. 1107 (W.D.Pa.1976) is distinguishable from the present case. In *Sroka,* the alleged actions were beyond the scope of authority permitted by law, but in the present case the SBA had authority to enter escrow agreements and their nonrepudiation of Look's signing of the agree-

ment evidences the authority that he was considered to have possessed.

The SBA as escrow agent was bound to perform in accordance with the terms of the escrow agreement and their failure to carry out the duties was a breach of the duty they assumed. Under these circumstances, the Plaintiff is entitled to interest from the time the performance was due. *See Oxford Manufacturing Co., Inc. v. Cliff House Building Corp.*, 224 Pa.Super. 387, 307 A.2d 343 (1973). The SBA, as escrow agent has no right to relitigate the amount due the Plaintiff under the escrow agreement. The escrow agreement provided that a determination by a court as to the amount due was the amount to be paid and the judgment entered by the Court of Common Pleas of Luzerne County meets this requirement. Plaintiff is therefore entitled to the $38,548 plus interest.

An appropriate order will be entered.