UNITED STATES of America

v.

**Donald ZORGER and Alma Zorger, his wife, Defendants.**

**Civ. A. No. 75–1313.**

United States District Court,
W. D. Pennsylvania.

Feb. 12, 1976.

Joel B. Strauss, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Thomas Hollander, Evans, Ivory & Evans, Pittsburgh, Pa., for defendants.

## OPINION

TEITELBAUM, District Judge.

This is an action brought by the United States pursuant to 28 U.S.C. § 1345[1] to enjoin defendants Donald and Alma Zorger from maintaining a campground on a 17.19 acre tract of land located in Greenwood Township, Clearfield County, Pennsylvania. The property, designated as Tract 712–E, is owned by defendants in fee, subject to a government flowage easement over its entirety. The United States contends that defendants' use of the burdened property as a commercial campground impermissibly interferes with, and violates the terms of, this

---

[1]. "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or pro-ceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."

flowage easement, acquired by deed from a predecessor in title to defendants in connection with the construction of an Army Corps of Engineers flood control project known as the Curwensville Dam and Reservoir. After a full hearing on this matter[2], I am persuaded, for reasons set forth below, that the injunction sought by the government should be granted.

The Curwensville Dam is situated on the Susquehanna River some 12 to 14 miles downstream of Tract 712–E. Completed by the Department of the Army approximately eight years ago under authority of the Flood Control Acts, 33 U.S.C. § 701 *et seq.,* the dam is a mechanism designed to control flooding over downstream areas proximate to the River. When flood conditions are imminent, the dam gates are closed to prevent such downstream flooding. This in turn causes the waters in the storage reservoir to rise, creating a risk of flooding upstream of the dam. Recognizing this risk, and acting under the specific authority conferred by 33 U.S.C. § 701c–1, and in furtherance of a general Congressional purpose of preventing flood-related "loss of life and property" (33 U.S.C. § 701a), the United States obtained flowage easements on certain upstream lands in connection with the Curwensville project. Such an easement was acquired on Tract 712–E, for valuable consideration, from Camp Corbly Association in 1964.

There is no dispute in this case regarding the fundamental import of the deed by which the government obtained its flowage easement over Tract 712–E. By its express terms, the deed of easement creates the affirmative right in the United States to perpetually flood the tract in connection with the Curwensville project. The deed also expressly restricts the use of the area subject to the flowage easement by the owner of the underlying fee estate, providing in pertinent part that:

" . . . no structures for human habitation shall be constructed or maintained on said land, and provided further that no other structures shall be constructed or maintained on said land except as may be approved in writing by a duly authorized representative of the United States in charge of the said Project."

Camp Corbly Association conveyed its interest in Tract 712–E, subject to the easement of the United States, to Mr. and Mrs. Philip W. Zieg in 1971. Thereafter, by deed dated March 23, 1973, the Ziegs conveyed their interest in Tract 712–E to Mr. and Mrs. Donald Zorger, defendants in the action *sub judice.* The deed from the Ziegs to defendants recites verbatim the terms of the flowage easement conveyed by Camp Corbly Association to the United States, and defendant Donald Zorger has acknowledged that he was fully aware of the terms of the easement at the time of the conveyance to him. Indeed, Zorger made inquiry regarding the flowage easement at the office of Frances Maruschak, damtender for the Curwensville Dam, prior to purchasing the tract. At that time or during a subsequent visit shortly after his purchase of the land, Zorger asked Maruschak how he might proceed to request permission to make certain uses of Tract 712–E. Maruschak, an employee of the Army Corps of Engineers, advised Zorger that such a request should be directed to the Corps of Engineers Baltimore District.

On March 28, 1973, the Baltimore District received defendants' request for permission to maintain a campground on Tract 712–E, and to construct a restroom to be used in connection with the campground. The District responded by sending Zorger a map accompanied by a request that he circle the area of the proposed campground. Zorger did so and returned the map to the District. A representative of the District's Real Estate Division then instructed Maruschak to

---

**2.** At that time, the trial of this action on the merits was advanced and consolidated with the hearing on the government's application for a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure.

meet with Zorger and inspect the premises. Maruschak complied on April 23, 1973.

The parties are in substantial disagreement as to what transpired during the April 23 inspection of Tract 712–E. Defendants contend, and Donald Zorger testified, that Maruschak represented that the proposed use of the property as a camping facility would be permitted by the Baltimore District, that Zorger would receive formal, written approval some months later and that defendants could begin to develop the site on the basis of his oral permission. The government contends, and Maruschak testified at the hearing before this Court, that Maruschak at no time represented to Zorger that he had permission from the District to proceed with his intended use of the property. Maruschak testified that in the course of the inspection of Tract 712–E, Zorger questioned him as to what he, Maruschak, would do if he owned the intended campsite, and that, after reiterating that he would first obtain permission to maintain the campground from the Baltimore District, he proceeded to tell Zorger that he would take certain measures—such as chaining picnic tables to trees—calculated to provide some protection against flooding on the easement area.

▉ Upon consideration of the testimony, I am inclined to accept Maruschak's recollection of the statements made at the time of his inspection of Tract 712–E. However, I do not believe that resolution of the conflicting testimony is crucial to the result in this case. Assuming *arguendo* that Maruschak in fact orally represented that Zorger was permitted to maintain a campground on the encumbered land, such an oral statement could not, as a matter of law, extinguish the restrictions contained in the deed of easement to the government.

By operation of the Pennsylvania Statute of Frauds applicable to interests in realty, 33 P.S. § 1, a parole agreement between the owners of the servient and dominant tenements cannot extinguish a servitude created by deed; this can be accomplished only by deed or written note or by operation of law. *Erb v. Brown,* 69 Pa. 216 (1871); *Fogal v. Swart,* 37 Pa.Super. 217 (1908). Moreover, even if Maruschak could have orally abolished or modified the servitude imposed by deed upon Tract 712–E, a result which would directly contravene the Statute of Frauds, the government would not be bound by his representations that defendants would be permitted to maintain a campground on the property. The United States is neither bound nor estopped by representations made by an agent without authority to bind the government in a transaction, see *Walsonavich v. United States,* 335 F.2d 96, 101 (3d Cir. 1964), and Maruschak clearly possessed no authority to grant the permission sought by defendants. Such authority was vested in the District Engineer of the Baltimore District and redelegated by him only to the Chief of the District's Real Estate Division. If the alleged oral representations were indeed made by Maruschak to Zorger on April 23, which I am inclined to doubt, they neither abated the restrictions upon the use of Tract 712–E nor presently estop the government from asserting those restrictions.[3]

There is no significant dispute with respect to the remaining facts which give rise to this lawsuit:

Subsequent to the meeting with Maruschak, defendants proceeded, at substantial effort and expense, to construct a campground facility on Tract 712–E. On June 1, 1973, the Baltimore District denied in writing defendants' request to construct and maintain a campground

---

**3.** Aside from questions of the Statute of Frauds and Maruschak's authority, it is to be noted that the deed of easement itself expressly requires *written* permission to maintain structures upon Tract 712–E. Defendants certainly are chargeable with notice respecting this provision—indeed, Donald Zorger concedes his actual knowledge thereof. It is consequently difficult to discern any merit in defendants' claim of justifiable reliance on Maruschak's alleged oral approval of the campground.

and restroom on the encumbered property, stating that campers would be endangered by possible flooding and that a restroom utilizing existing septic tanks might, in the event of flooding, cause sewage to be discharged into the Susquehanna River. One week later, in the course of an unrelated on-site inspection of Tract 712–E and adjoining properties, representatives of the Corps of Engineers observed that defendants had completed construction of a cement block restroom on the property, and that some 30 trailers and campers were parked on the tract. Thereafter and up to the present time, the Baltimore District has repeatedly advised defendants that maintenance of the campground and operational use of the restroom on the premises are impermissible under the government flowage easement.[4]

Defendants have nonetheless continued to maintain a campground facility on Tract 712–E. They currently have some 125 oral leases for individual campsites on the property. These are generally renewed from year to year. The most prevalent lease term is from May through September, but at least some leases extend into the fall hunting season.

Lessees of the Zorger campsites station mobile homes, trailers and campers, as well as simple tents, on the property subject to the government easement. Some of these are motorized, while others are on wheels, but have no independent motive power. The tents are affixed to the ground by short tent pegs. The mobile homes, trailers and campers are not connected to the ground or to any electrical or water supply sources; however, they are generally placed on the campground and left there for the duration of the particular lease term. Clearly, each of these various camping units serves as a place of occupancy, in which campsite lessees temporarily live and sleep.

As previously noted, the restrictions embodied in the flowage easement acquired on Tract 712–E by the United States unambiguously provide, *inter alia,* that "no structures for human habitation shall be constructed or maintained" on the land. While no habitable structures have been "constructed" on the Zorger property, the language of the deed of easement is disjunctive, and the mere "maintenance" of a habitable structure is therefore prohibited on the flowage easement area. It would seem apparent that the trailers, campers, mobile homes and tents which are stationed on Tract 712–E, for a period of months or even days, are "maintained" on that property. Accordingly, the critical question before this Court is whether the camping units so maintained may properly be deemed to constitute "habitable structures" within the restrictive meaning of the deed of easement to the United States.

*Webster's Third New International Dictionary* defines the word "habitable" as "capable of being inhabited" (at p. 1017). The root word "inhabit" is alternatively defined as follows: "to occupy as a place of settled residence or habitat;" to "live or dwell in;" "to be at home in;" "to occupy, be present in, or be inside of in any manner or form;" to "dwell, live" (at p. 1163). *Webster's* defines the word "structure" as "something constructed or built," or "something made up of more or less interdependent elements or parts" (at p. 2267).

In the face of the above definitions, defendants contend that trailers, campers, mobile homes and tents are not "habitable structures" because the word "habitable" is properly construed to include only those structures occupied as permanent residences, while the word "structure" applies only to those things permanently attached to realty. I am not persuaded that so restrictive a definition should control in this case. In my view, the camping units here in question

---

4. The Chief of the Baltimore District's Real Estate Division apparently informed defendants that the restroom would be permitted to

remain on the property for the purpose of allowing the Zorgers to avoid the expense of removing it, but not for operational use.

constitute "habitable structures" in that they are built to serve as living and sleeping quarters, and are occupied, lived or resided in for varying lengths of time.

▇▇▇ The above interpretation not only accords with the common dictionary definitions of "habitable structure," but also results upon application of the established principle of deed construction that the language of an instrument must be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when the deed was executed. *Highland v. Commonwealth,* 400 Pa. 261, 161 A.2d 390 (1960). The instant prohibition against habitable structures on Tract 712–E thus must be considered in light of the purpose of the easement—to afford the government a perpetual right to flood and submerge the burdened land. Acquisition of this right was deemed necessary in view of the increased risk of upstream flooding which would result from construction of the Curwensville Dam. The clear objective of the prohibition against habitable structures was to protect persons and property from this enhanced risk. Inasmuch as the risk is not confined to those who might occupy immobile or permanently-stationed units on Tract 712–E, but extends to and endangers those who live and sleep in more mobile quarters stationed on the property on a temporary basis, the objective of the instant prohibition would be thwarted by a construction of the easement which excludes camping units from coverage by the term "habitable structure." As the government has noted, defendants' contention that the risk of flood-related harm is reduced by the greater mobility of the camping units is not persuasive where the intendment of the flowage easement was to eliminate this type of risk altogether. Accordingly, I find that the trailers, campers, mobile homes and tents maintained on Tract 712–E all constitute "habitable structures" prohibited by the government's flowage easement.

▇▇▇ With regard to the operational restroom constructed on the Zorger property, a non-habitable structure, it need only be restated that the restrictions contained in the flowage easement acquired by the government also provide that "no other structures shall be constructed or maintained on said land except as may be approved in writing by a duly authorized representative of the United States in charge of said project." Defendants have never received written permission to construct or maintain an operational restroom on Tract 712–E. Indeed, their request to do so was denied in writing by an authorized agent of the Baltimore District. In view of the danger of sewage effluent discharging into the River during flood conditions, and the proposed use of the restroom in conjunction with, and as part of, the prohibited maintenance of a campground on the flowage easement, that denial of permission was neither arbitrary nor capricious, but was a proper exercise of governmental discretion. Defendants' maintenance of a restroom in operational condition on the encumbered property thus amounts to an impermissible interference with the easement.

▇▇▇ On the basis of all of the above, I find that defendants' present use of Tract 712–E constitutes an impermissible encroachment upon the government's flowage easement, and that injunctive relief is warranted in order to protect the general welfare and prevent irreparable harm to federal property interests.[5] See *Light v. United States,* 220 U.S. 523, 31 S.Ct. 485, 55 L.Ed. 570 (1911); *In re Debs,* 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092 (1895); *United States v. Petersen,* 91 F.Supp. 209 (S.D.Cal.

---

5. This result is not altered by defendants' apparent assertion that the government is guilty of laches in failing to bring suit within three years. The United States is not subject to the defense of laches in enforcing its rights. *United States v. Gera,* 409 F.2d 117, 120 (3d Cir. 1969).

1950). Accordingly, such relief will be granted by appropriate Order.

The foregoing shall constitute the findings of fact and conclusions of law required by F.R.Civ.P. 52.