Lucille WHITE, Individually and as Administratrix of the Estate of Gerald J. White, Deceased, Gerald J. White, a Minor and Sara White, a Minor By and Through Lucille White, Parent and Natural Guardian, Plaintiffs,

v.

UNITED STATES of America, DEPARTMENT OF INTERIOR, Defendant.

Civ. No. 83–1360.

United States District Court, M.D. Pennsylvania, Third Circuit Division.

Jan. 29, 1986.

---

84

Joseph A. Quinn, Jr., Neil L. Conway, Hourigan, Kluger, Spohrer & Quinn, Wilkes-Barre, Pa., for plaintiffs.

James J. West, U.S. Attys. Office, Scranton, Pa., Paul F. Figley, Asst. Director, Torts Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

MEMORANDUM AND ORDER

NEALON, Chief Judge.

This matter comes before the court as the result of the death of Gerald White on

May 21, 1982. White was killed when the Pine Brook mine shaft collapsed during a shaft filling project. On September 21, 1983, plaintiffs commenced this action after their administrative claim for relief was denied. The case was scheduled for trial, but on January 10, 1985, a settlement conference was held with the court and a purported settlement agreement[1] was reached between the parties. Because the details of the agreement are important in the disposition of the present motions, they will be set out in detail. By Order dated January 30, 1985, the court approved the agreement reached on January 10, 1985. The case was marked settled and discontinued with prejudice on February 8, 1985. When payment as required under the agreement was not received, plaintiffs filed a Motion to Enforce Settlement Agreement and a brief in support thereof on July 30, 1985 and September 3, 1985 respectively. Defendant, United States of America, Department of Interior ("United States"), filed an answer to plaintiffs' motion on August 8, 1985. Subsequently, defendant filed a Motion to Vacate the court's Order of January 30, 1985 and a brief in support thereof on August 14, 1985 and August 21, 1985 respectively. Defendant also filed a reply brief on September 20, 1985. Pursuant to plaintiffs' request, oral argument was held in open court on November 15, 1985. Plaintiffs were granted an opportunity to file additional affidavits and other documentation in support of their motion by Order dated November 20, 1985. *See* Document 66 of the Record. Plaintiffs filed a Report of Keith R. Isleib of Ringler Associates, Inc., a Report of Anthony J. Turchetti, LL.B., M.D., an Affidavit of Lucille White and the Joint Affidavit of Joseph A. Quinn, Jr., Esquire and Neil L. Conway, Esquire on December 10, 1985. *See* Documents 67, 68, 69 and 70 of the Record. Defendant responded by filing a Supplemental Memorandum in Support of

1. For the purpose of clarity, the court refers to the purported settlement agreement merely as an agreement. Whether, in fact, a binding

agreement exists is addressed further in this Memorandum.

Defendant's Motion to Vacate and in Opposition to Plaintiffs' Motion to Enforce Settlement Agreement on December 26, 1985. Defendant also submitted the case of *Bohlen v. United States,* 623 F.Supp. 595 (1985), in support of its position. The matter is now ripe for disposition. For the reasons set forth below, plaintiffs' Motion to Enforce Settlement Agreement will be denied and defendant's Motion to Vacate the Court's Order will be granted.

*Factual Background*

The pertinent facts surrounding the present motions can be summarized as follows:

This case, assigned to the Honorable R. Dixon Herman, was scheduled for trial on January 22, 1985. Because the matter would be tried non-jury, at the request of counsel, a settlement conference was held before the undersigned on January 10, 1985. Plaintiff, Lucille White ("White"), plaintiffs' counsel, Joseph A. Quinn, Esq. and Neil L. Conway, Esq. and White's parents appeared before the court on plaintiffs' behalf. Assistant United States Attorney Bernard O'Hare ("O'Hare"), appeared on behalf of Defendant United States. At the request of those present, Keith Isleib of Ringler Associates, Inc. was available for consultation at the settlement conference. After extensive negotiations, an agreement was reached. This agreement was described in open court and approved by court Order dated January 30, 1985. The agreement detailed a settlement requiring the United States to pay approximately two million dollars to finance a structured settlement. Subsequent to the court's Order, the United States informed plaintiffs that it would not comply with the terms of the January 10, 1985 agreement. Basically, the United States alleges that the agreement is void because O'Hare lacked authority to enter into the agreement on defendant's behalf. Plaintiffs assert that the agreement is binding and, in the alternative, that defendant is estopped from asserting the agreement's invalidity. With this background in mind, the court now focuses on the merits of the instant motions.

## I.

■ The first matter that must be addressed is whether the court has subject matter jurisdiction over the present controversy. Clearly, the court had jurisdiction over the underlying claim based on the Federal Tort Claims Act ("FTCA") which forms the basis of the present matter. *See* 28 U.S.C. § 1346(b). The question is whether this jurisdiction extends to the attempted enforcement of the agreement entered into on January 10, 1985. Defendant contends that "this court lacks subject matter jurisdiction to enforce the January 10, 1985 'agreement.' "[2] *See* Answer to Plaintiffs' Motion to Enforce Settlement Agreement—Fourth Defense.

"It is well settled that a federal court has the inherent power to enforce and to consider challenges to settlements entered into in cases originally filed therein." *Fox v. Consolidated Rail Corp.,* 739 F.2d 929, 932 (3d Cir.1984), *cert. denied,* 469 U.S. 1190, 105 S.Ct. 962, 83 L.Ed.2d 968 (1985). The court normally exercises this power without inquiring into or requiring an independent basis of subject matter jurisdiction. *Id; cf Fairfax Countywide Citizens Ass'n v. County of Fairfax,* 571 F.2d 1299 (4th Cir.1978), *cert. denied,* 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978) (independent jurisdictional basis required when set-

**2.** The first substantive averment concerning this claim appears in a footnote on the last page of defendant's brief in support of its motion. Defendant states, "to the extent that plaintiffs assert that the purported 'settlement' constitutes a contract requiring the United States to pay in excess of $10,000, the court lacks subject matter jurisdiction." *See* Document 57 of the Record at 5. In fact, defendant does not raise this issue in any other document filed with the court. Therefore, the court questions if defendant wishes to object to this court's subject matter jurisdiction. Clearly, however, subject matter jurisdiction cannot be conferred by agreement of the parties. *See Amalgamated Sugar Co. v. Bergland,* 664 F.2d 818 (10th Cir.1981). A court can determine the merits of a controversy only if jurisdiction exists at all stages of the proceeding. *Id.*

tlement is not contained in court's Order dismissing original action). In the present case, the court entered an Order approving the agreement on January 30, 1985. Therefore, this court appears to have subject matter jurisdiction.

The United States, however, has raised the issue of the applicability of 28 U.S.C. § 1346(a)(2). In pertinent part, this section provides, "the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States...." *Id.* The United States Claims Court has jurisdiction over claims founded upon express or implied contract with the United States. *See* 28 U.S.C. § 1491(a)(1). Thus, this court must resolve the apparent conflict between a court's power to enforce its settlement agreement and the language of § 1346(a)(2).

The authority of a court to enforce a settlement agreement has as its foundation a policy favoring amicable adjustment of disputes and avoidance of costly and time consuming litigation. *See Rosso v. Foodsales, Inc.,* 500 F.Supp. 274 (E.D.Pa.1980). It would be anomalous for this court to relinquish jurisdiction at this stage of litigation. While the Court of Claims has exclusive jurisdiction over express or implied contract actions involving greater than $10,000.00, *see Amalgamated Sugar Co. v. Bergland, supra,* plaintiffs are correct in pointing out that Fed.R.Civ.P. 60(b) is intended to provide relief from a judgment by motion in the court which rendered the judgment. The court deems that the instant dispute is ancillary to the original action and is properly within this court's subject matter jurisdiction. *See United States v. Newport News Shipbuilding and Dry Dock Co.,* 571 F.2d 1283 (4th Cir.1978), *cert. denied,* 439 U.S. 875, 99 S.Ct. 212, 58 L.Ed.2d 189 (1978) (district court enforced oral settlement purportedly reached between shipyard and the Navy; court of appeals found that a binding settlement was not reached).

In reaching this decision, the court recognizes that "the Court of Claims' jurisdiction to review Federal Tort Claims Act decisions by consent of the parties has not been extended to the Claims Court." 17 C. Wright & A. Miller & E. Cooper, Federal Practice and Procedure § 4101 at 49 (Supp. 1985). Aside from the question of whether this action is based on implied or express contract, the parties are really seeking to enforce or vacate an agreement reflected in a court Order that arose from a case instituted pursuant to the FTCA. *Cf. Tennessee ex rel. Leech v. Dole,* 749 F.2d 331 (6th Cir.1985), *cert. denied,* — U.S. —, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985) (Court of Claims does not have exclusive jurisdiction over a suit merely because it raises contract related issues; suit clearly not grounded in contract not subject to exclusive Court of Claims jurisdiction). Accordingly, jurisdiction over this proceeding is proper. *See Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368 (6th Cir.1976), *cert. denied,* 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976) (even if court's original jurisdiction was questionable, court has jurisdiction over settlement agreement).

## II.

■ The next inquiry is whether federal or state law is to be applied in analyzing the validity and effect of the settlement agreement. It is established that the law of the state where the act or omission occurred governs the substantive rights of the parties under the FTCA. 28 U.S.C. § 1346(b). Plaintiffs contend that Pennsylvania law governs the validity of the settlement agreement entered into in this case.

In support of their position, plaintiffs distinguish those cases cited by defendant and assert that this agreement is governed by Pennsylvania law because Pennsylvania law provided the substantive rules for the underlying claim. Generally, the construction and enforcement of settlement agreements are governed by principles of local law applicable to contracts generally. *See e.g., Strickland v. Marathon Oil Co.,* 446 F.Supp. 638 (E.D.La.1978). *Cf. Fox v. Consolidated Rail Corp. supra* (substantive aspects of Federal Employer's Liability Act

case governed by federal law; interpretation of settlement agreement terminating previous FELA suits is a question of federal law). Plaintiffs, however, cite no support for the proposition that state law controls in the situation *sub judice*. The court may have been inclined to agree with plaintiffs' position were this a mere matter of contract interpretation. *Contra Homestake-Sapin Partners v. United States*, 375 F.2d 507 (10th Cir.1967) (issue resolved by interpretation of settlement agreements executed by, *inter alia*, the United States; apparent application of federal law in determining intent of parties).

The issue in this case, however, is the effect of an agreement negotiated by O'Hare without the authority to do so. The agreement itself is clear. In fact, this court sought to ensure that the agreement could not be misinterpreted. *See* Transcript of Court Proceedings attached to Plaintiffs' Motion to Enforce Settlement Agreement. Therefore, this case involves a determination of the extent to which a federal Assistant U.S. Attorney can bind the federal government. Accordingly, resolution of the issue is a matter of federal concern that requires uniformity of result. *See Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943).

A similar result was reached in *Gamewell Manufacturing Inc. v. HVAC Supply, Inc.*, 715 F.2d 112 (4th Cir.1983). In *Gamewell*, the court, in construing a settlement agreement in a patent infringement case stated:

Settlements and releases assertedly entered into in respect of federal litigation

already in progress implicate federal procedural interests *distinct from the underlying substantive interests of the parties. Once a claim—whatever its jurisdictional basis—is initiated in the federal courts, we believe that the standards by which that litigation may be settled, and hence resolved short of adjudication on the merits, are preeminently a matter for resolution by federal common law principles; independently derived.*

*Id.* at 115 (emphasis added). *Cf. United States v. Orr Construction Co.*, 560 F.2d 765 (7th Cir.1977) (when federal law governs substantive rights of the parties and jurisdiction over settlement agreement is derivative of original federal action, enforcement of settlement agreement is to be decided as a matter of federal law). Although this appears to contradict the general statement that the enforcement of settlement agreements is governed by principles of state law applicable to contracts generally, *see Lee v. Hunt*, 631 F.2d 1171, 1173–74 (5th Cir.1980), *cert. denied*, 454 U.S. 834, 102 S.Ct. 133, 70 L.Ed.2d 112 (1981), in this case the need for uniformity also points to the application of federal law.[3] *See Miree v. DeKalb County*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *see also Seredinski v. Clifton Precision Products Co.*, 776 F.2d 56 (3d Cir. 1985) (attempt to revive original federal claims by alleging fraud in the procurement of a settlement agreement arose under federal law; need for a uniform standard).

Applying federal law, the court must determine if the United States is bound by the agreement entered into by O'Hare.[4]

**3.** As already stated, this case is not the typical case of interpreting a settlement agreement. The question is the extent that the United States can be bound by the acts of O'Hare. As such, even if state law were utilized, federal law must be analyzed to determine the relationship between O'Hare and the United States. Furthermore, in examining the applicability of estoppel etc. to the federal government, federal law necessarily must be utilized. For example, the actual authority vested in O'Hare to enter into settlement agreements is clearly a question of federal law. *See e.g.,* 28 C.F.R. § 0.160–61.

**4.** There is no doubt that O'Hare did enter into an agreement with plaintiffs on January 10, 1985. The transcript of the court proceedings demonstrates that an agreement was consummated. The issue is if the United States is bound by that agreement. Typically, authority to bind a principal in cases such as this is based on actual authority, apparent authority, or estoppel.

Plaintiffs apparently allege that defendant is bound under normal contract law and/or apparent authority principles and/or estoppel. Because each theory alone may bind the defendant, each argument will be considered *seriatim.*

### III.

■ Plaintiffs maintain that defendant ratified the agreement entered into by O'Hare because defendant waited approximately six (6) months before indicating that it would not honor the agreement. Plaintiffs aver that they advised the United States Attorney, James West, by letter dated January 30, 1985, of the settlement entered into by O'Hare.[5] Defendant counters by stating that the letter referred to by plaintiffs did not disclose the amount of the settlement. A perusal of plaintiffs' letter demonstrates that no settlement figure was disclosed to Mr. West. *See* Reply Memorandum of Defendant-Exhibit A. Thus, there is no evidence that West ratified the agreement entered into by O'Hare.

■ Furthermore, as defendant points out, West himself did not have the authority to enter into the settlement agreement on behalf of the United States. The settlement agreement in this case called for the outlay of approximately two (2) million dollars by the United States. Applicable regulations establish that for settlements over $750,000.00 only the Deputy Attorney General, on behalf of the Attorney General, is authorized to exercise settlement authority. *See* 28 C.F.R. § 0.161. The Assistant Attorney General is authorized, with limited exceptions, to settle matters for amounts not exceeding $750,000.00. United States Attorneys, such as Mr. West, are authorized to accept offers in compromise only if the amount in question does not exceed $100,000.00. Accordingly, even if West did ratify the agreement, he had no authority to bind the United States for this two (2) million dollar settlement. Plaintiffs still would be confronted with the problem of establishing a right to enforce the agreement against the United States. In sum, no valid contract existed through ratification because the party intended to be bound by plaintiffs did not, in fact, authorize the settlement. *See e.g., Philip Morris, Inc. v. Pittsburgh Penguins, Inc.,* 589 F.Supp. 912 (W.D.Pa.1983), *aff'd,* 738 F.2d 424 (3d Cir.1984) (knowledge of entity sought to be bound inferred from actual knowledge of entity's officers concerning contract and its implications).

### IV.

The record discloses that plaintiffs had reason to believe that O'Hare possessed express authority from defendant to enter into the agreement on January 10, 1985. In fact, the agreement was approved by the court with the understanding that O'Hare possessed this authority. The transcript discloses the following:

> THE COURT: Which would round out to $2,000,020.00. All right?
>
> MR. O'HARE: That's acceptable to the government, Your Honor.
>
> THE COURT: That is acceptable?
>
> MR. O'HARE: Yes, Your Honor.
>
> THE COURT: And that's been cleared with your superiors in Washington?[6]

---

5. In their brief, plaintiffs assert that "the evidence will show that on January 30, 1985, Mr. O'Hare's superior were aware of the settlement in this matter by Mr. O'Hare." Plaintiffs do not specify who is included in the term "superiors." It cannot be seriously argued, however, that the terms of the settlement agreement were made known to the Deputy Attorney General as required by law. *See infra* at 88.

6. The unsworn declaration of Jeffrey Axelrad sufficiently establishes that O'Hare did not communicate with his superiors in Washington and that no one with actual authority to bind the

United States knew of or ratified the agreement in this case. *See* Declaration of Jeffrey Axelrad attached to Defendant's Motion to Vacate at ¶ 3, ¶ 4 and ¶ 5. Since August 15, 1977, Axelrad has served as Director of the Torts Branch of the Civil Division of the United States Department of Justice. *Id.* at ¶ 1. Axelrad's responsibilities include all civil damage suits arising under the Federal Tort Claims Act other than those involving aviation or asbestos. *Id.* Settlement recommendations in a case such as this for amounts in excess of $100,000.00 would require Axelrad's signature before being forwarded to the Deputy Attorney General. *Id.* at ¶ 4. No settlement

MR. O'HARE: That's correct.

THE COURT: Okay.

*See* Transcript at p. 16 (footnote not in original).

Plaintiffs advance the argument that defendant is bound because O'Hare possessed apparent authority to enter into the agreement. "Apparent authority results from conduct by the principal which causes a third person reasonably to believe that a particular person has authority to enter negotiations or make representations as his agent."[7] *Mursor Builders, Inc. v. Roddy Realty, Inc.*, 459 F.Supp. 1317 (M.D.Pa. 1978). Before going into the requirements to establish apparent authority, the court must determine if that theory can be applied against the United States.

In *United States v. Zorger*, 407 F.Supp. 25 (W.D.Pa.1976), *aff'd*, 546 F.2d 421 (3d Cir.1976), the court held that the United States is not bound by representations made by an agent without authority to bind the Government in a transaction. *Accord Pia v. United States*, 7 Cl.Ct. 208 (1985) (doctrine of apparent authority does not apply to Government). Plaintiffs rely on *Mursor Builders, Inc. v. Roddy Realty, Inc., supra*, in support of the proposition that the doctrine of apparent authority applies to the Government.

In *Mursor*, Judge Herman stated, "the apparent authority doctrine applied to the Federal Government in the same manner as it would apply to any other individual." *Id.* at 1324 (citations omitted). Judge Herman distinguished *Zorger* by stating, "in that case there was no question that the alleged representations were well beyond the authority of the agent." *Id.* Finally, the case of *West Virginia Housing Development Fund v. Sroka*, 415 F.Supp. 1107 (W.D.Pa.1976), was distinguished in

that in *Sroka*, "the alleged actions were beyond the scope of authority permitted by law." *Id.* In the case *sub judice*, the actions of O'Hare were beyond the scope of his authority under the law. *See* 28 C.F.R. § 0.160–61; 31 U.S.C. § 1341. This alone may be reason enough to find that the doctrine of apparent authority does not apply here. *See Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947) (anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that the one who acts for the Government stays within the bounds of his authority). In *United States v. Kates*, 419 F.Supp. 846 (E.D.Pa.1976), the United States averred that even if an Assistant United States Attorney made representations concerning a grant of immunity, he had no authority to do so and the Government was not bound by his unauthorized acts. The court found that the Government's position was correct and stated, "in *United States v. Beebe*, 180 U.S. 343, 21 S.Ct. 371, 45 L.Ed. 563 (1901), the Supreme Court held that the United States was not bound by the unauthorized settlement of a claim by a United States Attorney." *Id.* at 858. *Accord Bohlen v. United States*, 623 F.Supp. 595 (1985). In any event, additional facts demonstrate that there is an insufficient basis for applying apparent authority principles in this case.

In *Mursor*, an attorney authorized by the Small Business Administration ("SBA") entered into an escrow agreement on behalf of the SBA believing that the execution of said documents was within the scope of his authority. *See Mursor, supra*, Findings of Fact at ¶ 18. In fact, in *Mursor*, the SBA never informed or advised the attorney that he lacked authority to execute the agreement on behalf of the SBA. *Id.* at

recommendation in this case was ever so forwarded. *Id.*

**7.** The difference between apparent authority and estoppel is not clearly enunciated. In fact, some courts combine apparent authority and estoppel into one theory. *See Land Mine Enterprises v. Sylvester Builders, Inc.*, Civil No. 81–931 (S.D.N.Y., July 29, 1985). Both apparent au-

thority and estoppel can bind a principal even if the agent's acts were unauthorized. Of course, under either theory, conduct by the principal causing third party reliance must be shown. In any event, this court focuses on each theory independently in order to determine the rights of the parties in this case.

¶ 27. In contrast, in this case, the agent (O'Hare) was acting without any authority to settle the controversy for the amount stated.[8] As in *Sroka*, O'Hare's actions were beyond the scope of authority permitted by law and the United States made known the fact that this authority was lacking. *See supra*, 28 C.F.R. § 0.160–61.

 Furthermore, the general rule is that parties who deal with a Government agent are charged with notice of the limits of the agent's authority. *See In Re All Asbestos Cases*, 603 F.Supp. 599 (D. Hawaii 1984). The Government is not bound by agreements of agents acting beyond the scope of their authority in part because of this constructive knowledge. *See C.P. Squire Contractors, Inc. v. United States*, 716 F.2d 865 (Fed.Cir.1983). In the present case, the parties recognized that the agreement required approval from federal authorities in Washington, D.C. Thus, the only apparent authority possessed by O'Hare arose from his own representations, not those of the defendant. In *Mursor*, the attorney had actual authority to negotiate the agreement and the SBA, knowing the agreement's terms, allowed the agreement to continue. This is another fact not present in the case under consideration.[9] Therefore, even if the doctrine of apparent authority generally applies to the Government, the facts in this case do not warrant such applicability here.

## V.

 In support of their position that defendant is estopped from asserting the in-

validity of the agreement, plaintiffs aver that "as a direct result of the agreement between the United States of America and the plaintiffs, plaintiffs have made material and significant changes in their positions and are now severely prejudiced by the failure of the United States to comply with the agreement of January 10, 1985." *See* Plaintiffs' Motion to Enforce Settlement Agreement at ¶ 21. Again, at the outset, the court must determine if the doctrine of estoppel can be applied against the federal government. The United States Supreme Court, while acknowledging that the Government's arguments that estoppel may never run against the Government were substantial, refused to hold that there are *no cases* in which estoppel may run against the Government. As the court stated:

> We are hesitant, when it is unnecessary to decide this case, to say that there are *no cases* in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor and reliability in their dealings with the Government.

*Heckler v. Community Health Services*, 467 U.S. 51, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984); *Cf. United States v. Locke*, 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985) (O'Connor, J., concurring) (no view expressed on whether estoppel may be utilized; previous decisions do not preclude application of estoppel against the

---

8. O'Hare obviously was aware that he could not settle the case at the agreed figure on his own because he misrepresented to the court that he had cleared the settlement with his superiors. *See supra*, n. 6 and accompanying text.

9. Judge Herman applied the doctrine based on the facts in *Mursor*. In *Mursor*, however, the SBA attorney was not advised that he lacked authority to enter into the agreement and the SBA *never* advised the other party that the agreement was improper. The SBA knowingly allowed the agreement to continue. These facts distinguish *Mursor* from this case. In the present case, the defendant performed no affirmative act which granted O'Hare apparent authority to enter into the agreement. *See Ed-*

*wards v. Born, Inc.*, 608 F.Supp. 580 (D.V.I.1985) (retention of an attorney does not bestow apparent authority to settle a client's cause of action). It would be anomalous for the court to find that an agent possesses apparent authority merely because the agent states that he has this authority. Such a holding would render meaningless the protections afforded by 28 C.F.R. § 0.160–61. Furthermore, applying apparent authority in this case would contravene the principle that the United States is not bound by the unauthorized acts of its agents. *See Heckler v. Community Health Services*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). The court notes that *Mursor* preceded *Heckler*.

Government). Therefore, this court will not hold as a matter of law that estoppel cannot be applied against the federal government.[10]

It is well settled that the Government may not be estopped on the same terms as any other litigant. *See Heckler v. Community Health Services, supra,* 104 S.Ct. at 2224. As the Supreme Court stated, "but however heavy the burden might be when an estoppel is asserted against the Government, the private party surely cannot prevail without at least demonstrating that the traditional elements of an estoppel are present." *Id.* Estoppel arises when one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it does act. *See id.* at 2223 *quoting* Restatement (Second) of Torts § 894(1). In this case, the Government must have made a misrepresentation which plaintiffs relied on thereby changing their position for the worse. *Id.* In addition, plaintiffs' reliance must have been reasonable. *Id.*

The court finds that plaintiffs fail to show "the sort of extraordinary circumstances" that are necessary to establish estoppel against a Government agency. *See Lovell Manufacturing v. Export-Import Bank,* 599 F.Supp. 961 (W.D.Pa.1985). "The law in the Third Circuit remains that the Government is not estopped by acts of its officers who enter into agreements to accomplish what the law does not sanction or permit." *United States v. Levering,*

455 F.Supp. 1165, 1168 (D.Del.1978) *citing Tracy Leigh Dev. Corp. v. Virgin Islands,* 501 F.2d 439 (3d Cir.1974). In *Levering,* an Assistant U.S. Attorney's letter might have led a defendant to believe that a grant of immunity would extend to related civil matters, but the court held that the United States was not estopped from seeking recovery because no Assistant U.S. Attorney was authorized to grant immunity from civil claims. Thus, it is clear why the Government may not be estopped on the same terms as other litigants. *Heckler v. Community Health Services, supra; Patton v. Director, Office of Workers' Compensation Programs,* 763 F.2d 553 (3d Cir. 1985) (Weis, J., dissenting) (estoppel may not often be invoked successfully against the Government). At a minimum, plaintiffs must establish some affirmative misconduct by O'Hare attributable to the United States which they detrimentally reasonably relied on. *See United States v. Ven-Fuel, Inc.,* 758 F.2d 741 (1st Cir.1985).

In this case, the affirmative act on which plaintiffs relied is O'Hare's statement that his superiors in Washington had approved the agreement. O'Hare's superiors made no affirmative representation on which plaintiffs relied.[11] Even if O'Hare's representation that he had approval to enter into the agreement is termed affirmative misconduct sufficient to bind the Government, plaintiffs must also establish

---

**10.** Defendant maintains that the agreement is void and, therefore, apparently contends that estoppel is unavailable to bind it to the agreement. While the agreement may be void, *see United States v. Beebe,* 180 U.S. 343, 21 S.Ct. 371, 45 L.Ed. 563 (1901), this does not preclude the application of the doctrine of estoppel in this case.

**11.** This reinforces the court's finding that the doctrine of apparent authority is inapplicable in this case. As stated, the only "apparent authority" possessed by O'Hare was that which he falsely stated he had. The United States did not cloak O'Hare with this authority. In fact, the authority to enter into the agreement is expressly negated by applicable regulations. It is unlikely that apparent authority principles would

be applied liberally in light of the strict standard imposed when a party seeks to estop the Government. *See supra,* at n. 8. As the Supreme Court has held:

> Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated Legislation, properly exercised through the rulemaking power.

*Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947).

that they detrimentally reasonably relied on the misrepresentations.[12]

Plaintiffs did not "detrimentally rely" on the agreement to the extent deemed necessary under the standard enunciated in *Heckler*. In discussing detrimental reliance, the court stated, "this is not a case in which the respondent has lost any legal right, either vested or contingent, or suffered any adverse change in its status." *Id.* 104 S.Ct. at 2225. The court recognized respondent's claim that it would be adversely affected by the Government's recoupment of funds that respondent had already spent, including the possibility of seeking relief from its debts through bankruptcy, and stated, "protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirement of law; respondent could expect no less than to be held to the most demanding standards in its quest for public funds." *Id.* Accordingly, *Heckler* demands more reliance than the mere expenditure of money which plaintiffs expected to receive. In *Heckler*, the court recognized that respondent would have to curtail its business operations and possibly even be forced to seek relief from its debts through bankruptcy. This detrimental reliance was insufficient to invoke estoppel against the Government. Plaintiffs are free to pursue their claim as if no agreement ever existed. The delay of approximately one (1) year is not the type of reliance to which the *Heckler* court speaks. *See also Tennessee ex rel. Leech v. Dole, supra* (doctrine of estoppel did not apply to the Government when the only detriment was simply an inability to retain money that the party should not have received in the first place). In sum, "assuming estoppel can ever be appropriately applied against the Government, it cannot be said that the detriment respondent [plaintiffs] faces is so severe or has been imposed in such an unfair way that petitioner [defendant] should be estopped from enforcing the law in this case." *Heckler v. Community Health Services, supra,* 104 S.Ct. at 2227. *Compare Heckler, supra, with Santos v. Franklin,* 493 F.Supp. 847 (E.D.Pa.1980). In *Santos,* plaintiff was required to report for active duty in the Navy because he had failed to attend the minimum number of training drills as a reservist. The court held that the Navy was estopped from enforcing active duty obligations upon the reservist when he was given a document by a Navy Career Counselor that erroneously indicated the number of drills that he had to attend in order to avoid recall to active duty. Therefore, the plaintiff in *Santos* suffered a significant loss of personal liberty and disruption of family life by virtue of the Government's misrepresentations.

■ In this case, plaintiffs were afforded the opportunity to factually establish the detriment they incurred in reliance on the settlement agreement. Certainly, the documentation submitted by plaintiffs sets forth in some detail plaintiffs' past, present and future reliance on the agreement. Thus, pursuant to plaintiffs' request at oral argument, the record has been supplemented to address this issue. By way of example, plaintiffs state that Lucille White turned down an attractive employment opportunity and spent more money on birthday gifts, etc., than normally would have been spent. *See* Document 69 of the Record at ¶1 and ¶2.[13] Moreover, the

12. Estoppel will not run against the Government unless the agent acted within the scope of his authority. *See West Virginia Housing Development Fund v. Sroka, supra.* "Generally, the Government cannot be estopped by the unauthorized statements of its agents." *Hondros v. United States Civil Service Commission,* 720 F.2d 278, 301 n. 2 (3d Cir.1983) (Adams, J., concurring) *citing Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). The *Heckler* court, while not addressing the issue, reaffirmed the general principle that "those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law." *Id.* 104 S.Ct. at 2226. O'Hare's statements to the court do not negate plaintiffs' responsibility to "know the law."

13. Lucille White's affidavit contains fourteen (14) paragraphs detailing money expended in reliance on the settlement agreement and emotional turmoil resulting from the disaffirmance of that agreement. The Report of Keith Isleib of Ringler Associates, Inc., illustrates the financial consequences of delayed payment and the

Joint Affidavit of Attorneys Quinn and Conway contains statements that the delay in bringing the case to trial will cause great prejudice to plaintiffs.[14] *See* Document 70 of the Record. Plaintiffs' expenditure of money, declination of an employment opportunity and emotional turmoil, though significant, do not equal the detriment suffered in *Santos*. Similarly, the additional time and expense necessary to prepare the case for trial is not such as to estop the United States from asserting the agreement's invalidity. Plaintiffs are still able to proceed with the case and conceivably could obtain a larger recovery. Furthermore, the court recognizes that the requirement of detrimental reliance necessary to assert estoppel against the Government has been more fully explained since *Santos*. *See Heckler, supra*. The Government's conduct here, considering all the circumstances, cannot be construed as offending a "minimum standard of decency, honor and reliability...." *Heckler v. Community Health Services, supra*, 104 S.Ct. at 2224. Accordingly, plaintiffs are not entitled to relief based on the equitable doctrine of estoppel.[15] The result reached by the court will be understandably disappointing to the plaintiffs who acted properly in every respect and bear no blame for the unexpected and unfortunate consequences. Because the Government is involved, however, the law allows for no other conclusion.

difficulties inherent in recreating the settlement agreement at a later time. Similarly, the Report of Anthony J. Turchetti, LL.B., M.D., details the emotional turmoil which Lucille White and her children have experienced since the death of Gerald White.

**14.** The majority of the statements contained in the thirty-five (35) page joint affidavit set forth factual averments concerning the substantive issues involved in the case. Plaintiffs maintain

that their case will be prejudiced because the recollection of witnesses will be impaired, additional trial preparation expenses incurred and additional time in preparing the case will have to be utilized. *See* Document 70 of the Record at 34.

**15.** The court notes the reasonableness of plaintiffs' reliance. This factor alone, however, does not warrant a finding that the Government is estopped in this case.